ANGELO IZZO *v.* COLONIAL PENN
INSURANCE COMPANY ET AL.
(12956)

HEALEY, SHEA, SANTANIELLO, CALLAHAN and MORAGHAN, Js.

Argued January 15—decision released April 28, 1987

*Martin A. Clayman,* with whom was *Holly Abery-Wetstone,* for the appellant (plaintiff).

*Donald G. Walsh,* with whom were *Michael E. Burt* and, on the brief, *David H. Johnson,* for the appellees (defendants).

ARTHUR H. HEALEY, J. On March 14, 1985, the plaintiff, Angelo Izzo, brought an action for a declaratory judgment in the Superior Court. On April 7, 1986, the parties, pursuant to Practice Book § 3133,[1] filed a joint

---

[1] Practice Book § 3133 (now § 4147) provides in part: "WHEN ENTERTAINED.

"The supreme court will not entertain a reservation for its advice upon questions of law arising in an action which is not ready for final judgment, unless the question or questions presented are such as are, in the opinion of the court, reasonably certain to enter into the decision of the case, and

motion to reserve questions of law for the advice of the Appellate Court. The parties sought to reserve the following questions: (1) "Whether Plaintiff . . . is a separate 'person' entitled to an independent 'per person' recovery for the injury of loss of consortium within the higher 'per occurrence' limit under the Defendant Alice J. McGee's automobile liability insurance policy with Defendant, Colonial Penn Insurance Company"; (2) "Whether Plaintiff's claim for loss of consortium is a claim for 'bodily injury' by a person within the meaning of Defendant Alice J. McGee's automobile liability policy with Defendant, Colonial Penn Insurance Company"; and (3) "Whether Connecticut's Financial Responsibility Act, [General Statutes §] 14-122 supercedes the automobile liability policy issued by Defendant, Colonial Penn Insurance Company." On April 9, 1986, the court, *O'Brien, J.,* granted the motion. On April 22, 1986, this court transferred the reservation to itself.

The underlying facts are stipulated as follows: On January 12, 1983, Olympia Izzo, wife of the plaintiff, was struck by a motor vehicle owned and operated by the defendant, Alice J. McGee. As a result of the accident, Olympia Izzo suffered permanent and disabling injuries, including the loss of her right leg, which was amputated above the knee. The plaintiff was not involved in the accident but, as a result of the injuries to his wife, suffered a loss of consortium.

it appears that their present determination would be in the interest of simplicity, directness and economy of judicial action.

"All questions presented for advice shall be specific and shall be phrased so as to require a Yes or No answer.

"A reservation shall be taken to the supreme court from those cases in which an appeal could have been taken directly to the supreme court had judgment been rendered. Reservations in cases where the proper court for the appeal cannot be determined prior to judgment shall also be taken directly to the supreme court. The advice of the appellate court on a reservation may be reviewed by the supreme court only upon the granting of certification as provided in chapter 55."

At the time of the accident, McGee was an insured of the named defendant, Colonial Penn Insurance Company (Colonial Penn). The Colonial Penn policy in effect at the time of the accident included liability coverage limits applicable to bodily injury coverage of $100,000 "per person" and $300,000 "per occurrence."

On March 7, 1984, the plaintiff and his wife brought suit against the defendants. In February, 1985, the case was settled in favor of Olympia Izzo only, for the "per person" policy limit of $100,000 and the case was withdrawn by her and the plaintiff.[2] As part of the settlement, the parties valued the plaintiff's loss of consortium claim at $50,000. As an additional part of the settlement, the defendants reserved the right to contest whether there was coverage under the insurance policy for the loss of consortium claim.[3]

I

We begin our analysis, as we must, with the applicable language of the insurance policy in effect at the time

---

[2] The settlement provided: "The Defendant, Alice J. McGee, will place into escrow in an interest bearing account the sum of FIFTEEN THOUSAND DOLLARS ($15,000.00) which the Plaintiff Angelo Izzo . . . agrees to accept, together with the interest earned thereon, as complete satisfaction of his loss of consortium claim unless, pursuant to a declaratory judgment the court finds that there is additional coverage under the insurance policy held by the Defendant, Alice J. McGee, with the Colonial Penn Insurance Company, in which case, the said Defendant's FIFTEEN THOUSAND DOLLARS ($15,000.00) (excluding interest earned thereon which, in any event, will be retained by Angelo Izzo) will be returned to her and The Colonial Penn Insurance Company, will pay the Plaintiff, Angelo Izzo, the sum of FIFTY THOUSAND DOLLARS ($50,000.00) in addition to the interest earned on said account in full satisfaction of his claim for loss of consortium. Reference to the word 'court' in this paragraph includes any appellate court so that this provision will not become applicable until the judicial remedies of the parties are exhausted."

[3] As part of the settlement, the defendants waived any argument that the settlement of Olympia Izzo's claim acted to extinguish the loss of consortium claim of the plaintiff. The defendants also waived any defense of the statute of limitations.

of the accident. The policy then in effect stated that
Colonial Penn "will pay all sums that the insured under
this coverage is legally required to pay as damages for
bodily injury. . . ." The "Limits of Coverage" portion
of the policy stated that "[t]here are two limits of cover-
age for Bodily Injury Liability. The amount shown on
your Declarations Page for 'Each Person' [$100,000]
is the most We'll pay for damages because of *bodily
injury* to one person caused by any one *occurrence.* The
amount shown on your Declarations Page for 'Each
Occurrence' [$300,000] is the most we'll pay for all dam-
ages as a result of any one occurrence, no matter how
many people are injured." (Emphasis added.) "Bodily
Injury," as defined in the policy, "means injury to a
person's body, sickness or disease, and death that
results from any of these."[4]

Given this language of the policy, the critical ques-
tion which must be addressed is whether the plaintiff's
claim for loss of consortium falls within the limits of
liability for "bodily injury to one person caused by any
one occurrence." In other words, does the plaintiff's
claim arise out of bodily injury sustained by "one per-
son" so as to make the "per person" limit applicable,
or is the plaintiff's claim a claim for bodily injury to
a second person such as to invoke the "per occurrence"
limit. The rule in Connecticut is that an insurance
policy, like any other contract, must be given a reason-
able interpretation and the words used are to be given
their common, ordinary and customary meaning.
*Gottesman* v. *Aetna Ins. Co.,* 177 Conn. 631, 634, 418
A.2d 944 (1979); *Lyon* v. *Aetna Casualty & Surety Co.,*
140 Conn. 304, 307, 99 A.2d 141 (1953). Although

---

[4] The policy provides that "Bodily Injury Liability Coverage includes the
cost of care and damages for the loss of an injured person's services." The
defendants do not argue that a claim for loss of consortium is not covered
by the policy. Instead, the defendants argue that their liability is limited
to $100,000, an amount which they have already paid.

ambiguities are to be construed against the insurer, when the language is plain, no such construction is to be applied. *Gottesman* v. *Aetna Ins. Co.,* supra; *Smedley Co.* v. *Employers Mutual Liability Ins. Co.,* 143 Conn. 510, 513, 123 A.2d 755 (1956). Applying the clear language of the policy to the facts of this case, and despite the plaintiff's statutory claims discussed below, we conclude that the $100,000 limit of liability "because of bodily injury to one person caused by any one occurrence" applies in this case. The plaintiff, therefore, is unable to avail himself of the higher "per occurrence" liability limit.

Connecticut has only recently recognized the right to recover for loss of consortium. *Hopson* v. *Saint Mary's Hospital,* 176 Conn. 485, 408 A.2d 260 (1979). This court has not yet considered the issue of whether a provision in an insurance policy which limits the amount of an insurer's liability because of "bodily injury" to one person applies to a claim for loss of consortium. An examination of cases from other jurisdictions, where loss of consortium has enjoyed recognition for a longer period of time, however, reveals that the majority of jurisdictions follow the principle that damages for loss of consortium, resulting from bodily injury to one person, are subject to the "per person" limitation. See, e.g., *Reid* v. *State Farm Mutual Auto Ins. Co.,* 784 F.2d 577 (5th Cir. 1986); *Montgomery* v. *Farmers Ins. Group,* 585 F. Sup. 618 (S.D. Ind. 1984); *Smith* v. *State Farm Mutual Auto Ins. Co.,* 252 Ark. 57, 477 S.W.2d 186 (1972); *State Farm Mutual Auto Ins. Co.* v. *Ball,* 127 Cal. App. 3d 568, 179 Cal. Rptr. 644 (1981); *United Services Auto Assn.* v. *Warner,* 64 Cal. App. 3d 957, 135 Cal. Rptr. 34 (1976); *State Farm Mutual Auto Ins. Co.* v. *Hodges,* 221 Ga. 355, 144 S.E.2d 723 (1965); *Travelers Indemnity Co.* v. *Cornelsen,* 272 Md. 48, 321 A.2d 149 (1974); *New Hampshire Ins. Co.* v. *Bisson,* 122 N.H. 747, 449 A.2d 1226 (1982); *Williams* v. *State*

*Farm Mutual Auto Ins. Co.*, 99 N.J. Super. 377, 240 A.2d 35 (1968); see also annot., 13 A.L.R.3d 1228, § 4 (1967 & Sup. 1986); 8A J. & J. Appleman, Insurance Law and Practice (1981) § 4893, p. 60;[5] 15A G. Couch, Insurance (2d Ed.) § 56:47; but cf. *Bilodeau* v. *Lumbermens Mutual Casualty Co.*, 392 Mass. 537, 467 N.E.2d 137 (1984). Although in these cases the specific policy language is not always identical to the language in the insurance policy at issue in this case, these cases hold that the "per person" limit is applicable to all claims of damage flowing from bodily injury to one person and, therefore, it is immaterial that some part of the damages may be claimed by a person other than the one suffering the bodily injury.

An often cited reason for holding that a spouse's claim for loss of consortium is included within the "per person" limit of liability for damages because of bodily injury to one person is that the term "one person" repeatedly has been construed to refer to the person injured directly and the words "each occurrence" to include the injuries of several persons, regardless of how many persons may suffer loss. See, e.g., *United Services Auto Assn.* v. *Warner,* supra, 963. The limitation applies to all damages sustained by all persons as a result of bodily injury to one person. This construction does not render the "per occurrence" limit a nullity because that provision applies to situations where more than "one person" suffers "bodily injury" in a

---

[5] In their treatise, the Applemans note: "[I]t often happens that there are consequential damages, as well as the damages suffered by the injured person himself. Thus, where a wife or child is injured, the husband or parent may also suffer consequential injuries by reason of liability for hospital and doctor bills or for loss of services or consortium. But it has been held that these different types of injuries cannot be split up, in order to bring the claim within the higher policy limits; they are regarded as essentially injuries to one person, so that the lower policy limits applicable to injuries sustained by any one person would govern." 8A J. & J. Appleman, Insurance Law and Practice (1981) § 4893, p. 60.

single occurrence. See, e.g., *Gass* v. *Carducci,* 52 Ill. App. 2d 394, 402a, 202 N.E.2d 73 (1964). It has been said that this "principle comports with sound logic and common sense." *United Services Auto Assn.* v. *Warner,* supra. We agree.

On the stipulated facts before us, it is obvious that the plaintiff would not have a claim under this policy for damages for loss of consortium but for the bodily injury his wife sustained in the accident with McGee. A cause of action for loss of consortium does not arise out of a bodily injury to the spouse suffering the loss of consortium; it arises out of the bodily injury to the spouse who can no longer perform the spousal functions. *Hopson* v. *Saint Mary's Hospital,* supra, 494; *United Services Auto Assn.* v. *Warner,* supra, 964; *Thompson* v. *Grange Ins. Assn.,* 34 Wash. App. 151, 161–62, 660 P.2d 307 (1983). We recognized in *Hopson* that although loss of consortium is a separate cause of action, it is an "action [which] is derivative of the injured spouse's cause of action." *Hopson* v. *Saint Mary's Hospital,* supra. Loss of consortium, although a separate cause of action, is not truly independent, but rather derivative and inextricably attached to the claim of the injured spouse. The plaintiff's loss of consortium claim, therefore, clearly fits within the "per person" limit as it is a loss sustained "because of bodily injury to one person caused by any one occurrence."

Although ambiguities or uncertainties in an insurance policy must be resolved against the insurer, nevertheless, the policy must be given a reasonable interpretation and the words used given their common, ordinary and customary meaning. *Horak* v. *Middlesex Mutual Assurance Co.,* 181 Conn. 614, 616, 436 A.2d 783 (1980); *United Services Auto Assn.* v. *Warner,* supra. In our opinion, the language setting forth the limits of liability is clear and free from ambiguity. The "per person"

limit applies to all damages resulting from bodily injury to one person, including a claim for loss of consortium.

In jurisdictions where, for purposes of the limits of dollar liability clause, a loss of consortium claim is treated separately from the claim for direct physical injury, thus allowing each claimant to recover under the higher "per occurrence" limit, the courts often have based their decisions on the language contained in the policy. In those cases, the policies spoke in terms of a limitation on damages payable because of "personal injury" to one person caused by one occurrence as opposed to damages payable because of "bodily injury" to one person. See, e.g., *Malone* v. *Costa,* 151 Fla. 144, 9 So. 2d 275 (1942); *Gaouette* v. *Aetna Life Ins. Co.,* 253 App. Div. 388, 2 N.Y.S.2d 497 (1938); *Sheffield* v. *American Indemnity Co.,* 245 S.C. 389, 140 S.E.2d 787 (1965). In these cases, the respective courts recognized that the phrases "bodily injuries" and "personal injury" are not synonymous. In *Malone* v. *Costa,* supra, 149, the court stated that the policy term "personal injuries" is "broader, more comprehensive and significant" than the term "bodily injury." See *Gaouette* v. *Aetna Life Ins. Co.,* supra, 389–90; see also 45 C.J.S., Insurance § 827, p. 880. The term "personal injury" is broad enough to encompass a claim for injury which is personal to the claimant, although flowing from the physical injury of another. It has been said that the term "bodily injury," however, is narrower in that it connotes an element of personal contact. *Malone* v. *Costa,* supra; see *Gaouette* v. *Aetna Life Ins. Co.,* supra; *Bakker* v. *Aetna Life Ins. Co.,* 148 Misc. 162, 169, 265 N.Y.S. 231 (1933). These cases, therefore, are distinguishable from this case in that the policy issued by Colonial Penn speaks in terms of a maximum recovery for damages because of "bodily injury" to one person. A claim of loss of consortium, although a "personal injury," is not a "bodily injury" to the claimant.

## II

The plaintiff, while conceding in his brief that a claim for loss of consortium is not a claim for "bodily injury," argues that, because of General Statutes § 14-112, the policy should be construed to cover "personal injury" claims and not merely "bodily injury" claims.

The plaintiff argues that because General Statutes § 14-112 (a)[6] requires that if a person violates certain other statutory sections, they must provide "proof of financial responsibility to satisfy any claim for damages by reason of *personal injury* to . . . any one person, of twenty thousand dollars, or by reason of *personal injury* to . . . more than one person on account of any accident of at least forty thousand dollars," the term "bodily injury" in the Colonial Penn policy must be expanded to encompass "personal injury." (Emphasis added.) In support of this argument, the plaintiff quotes that portion of the policy which pro-

___

[6] General Statutes § 14-112 (a) provides: "PROOF OF FINANCIAL RESPONSIBILITY ON VIOLATION OF CERTAIN STATUTES. (a) WHEN COMMISSIONER SHALL REQUIRE. EXCEPTION. To entitle any person to receive or retain a motor vehicle operator's license or a certificate of registration of any motor vehicle when, in the opinion of the commissioner, such person has violated any of the provisions of section 14-222, section 14-224 or subsection (a) of section 14-227a or any similar provision of the laws of any other state or any territory, or who has been convicted of, or has forfeited any bond taken for appearance for, or has received a suspended judgment or sentence for, a violation of any of said provisions, or who has been held or found criminally responsible in connection with any motor vehicle accident resulting in the death of any person, or who has a record on file with the commissioner which is sufficient, in the opinion of the commissioner, to require evidence of financial responsibility for the reasonable protection of other persons, the commissioner shall require from such person proof of financial responsibility to satisfy any claim for damages by reason of personal injury to, or the death of, any one person, of twenty thousand dollars, or by reason of personal injury to, or the death of, more than one person on account of any accident, of at least forty thousand dollars, and for damage to property of at least ten thousand dollars, except that, for violations of section 14-222 or section 14-224 if there is no personal injury and the prop-

vides: "If your home state increases the liability coverage required under its financial responsibility law, [w]e'll automatically increase the limits of your liability coverage." The plaintiff therefore argues that because our financial responsibility laws require greater coverage than that otherwise made available in the policy and "although the Colonial [Penn] policy expressly covers 'bodily injury' [the policy] must be read to comply with the financial responsibility statute and [so] must cover 'personal injuries' as well." In addition, the plaintiff argues that because the policy provides coverage for "bodily injury," while § 14-112 requires coverage for "personal injury," the terms of the policy are in conflict with the statute and the statute must take precedence over the language of the policy. We are unpersuaded by the plaintiff's arguments.

General Statutes § 14-112 (a) by its terms only applies upon the violation of certain statutes. These statutes are §§ 14-222 (reckless driving), 14-224 (evasion of responsibility in operation of a motor vehicle and rac-

---

erty damage is under four hundred dollars, the commissioner may, in his discretion, waive such requirements. When the commissioner requires proof of financial responsibility from an operator or owner of any motor vehicle, he may require proof in the amounts herein specified for each vehicle operated or owned by such person. If any person fails to furnish such proof, the commissioner shall, until such proof is furnished, suspend or revoke the license of such person to operate a motor vehicle or refuse to return any license which has been suspended or revoked in accordance with the provisions of section 14-111 or suspend or revoke the registration of any such motor vehicle or vehicles or refuse thereafter to register any motor vehicle owned by such person or refuse to register any motor vehicle transferred by him if it does not appear to the commissioner's satisfaction that such transfer is a bona fide sale, or, if such person is not a resident of this state, withdraw from such person the privilege of operating any motor vehicle in this state and the privilege of operation within this state of any motor vehicle owned by him. Prior to such suspension, revocation or withdrawal, notice thereof shall be given by the commissioner by a notice forwarded by bulk certified mail to the address of such person as shown by the records of the commissioner. No appeal taken from the judgment of any court shall act as a stay to any action of the commissioner authorized by the provisions of this section."

ing) and 14-227a (a) (operation of a motor vehicle while under the influence of alcohol or drugs). There has been no allegation by the plaintiff that any of these sections were involved in the accident of January 12, 1983.[7]

Despite the plaintiff's assertion to the contrary, it is General Statutes § 38-175b (a)[8] which establishes the minimum coverages that must be provided. Section 38-175b (a) specifically states that "[e]very such policy shall provide insurance in accordance with such regulations against loss resulting from the liability imposed by law, with *limits* not less than those specified in subsection (a) of section 14-112, for damages because of bodily injury or death of any person . . . ." (Emphasis added.) While § 38-175b (a) refers to § 14-112 (a) for the "limits" of coverage, i.e., the dollar amount of coverage which must be afforded an insured, § 38-175b (a) requires the insurer to afford this minimum coverage for "bodily injury" not "personal injury." We also note that § 38-175b (a) speaks to regulations enacted under § 38-175a. That section, in turn, which authorizes the insurance commissioner to adopt regulations with respect to minimum provisions in automobile liability policies, also uses the term "bodily injury." The Colonial Penn policy providing coverage for "bodily injury" is not in conflict with our statutes. In fact, the defendant's policy provides coverage limits of $100,000 "per

[7] In oral argument before this court, the plaintiff admitted that no claim was being made that McGee had violated any of the statutes set out in General Statutes § 14-112 (a) and that Colonial Penn's policy, admitted as an exhibit for purposes of the reservation before us, was not one filed by the insured to comply with § 14-112 (a).

[8] General Statutes § 38-175b (a) provides: "MINIMUM COVERAGES. APPLICABILITY. (a) Every such policy shall provide insurance in accordance with such regulations against loss resulting from the liability imposed by law, with limits not less than those specified in subsection (a) of section 14-112, for damages because of bodily injury or death of any person and injury to or destruction of property arising out of the ownership, maintenance or use of a specific motor vehicle or motor vehicles within any state, territory, or possession of the United States of America or Canada."

person" and $300,000 "per occurrence," amounts well above the required minimum limits of $20,000 "per person" and $40,000 "per occurrence" mandated by §§ 38-175b (a) and 14-112 (a). Because there is no conflict between our statutes and the language of the Colonial Penn policy, the policy must be read to provide coverage for "bodily injury" not "personal injury."

The answer to each of the three questions reserved is "No."

No costs will be taxed in this court to any party.

In this opinion the other justices concurred.