[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs, Bertram and Evelyn Orosco, and the defendant, Allstate Insurance Company, ("insurer") have submitted this case to the court on the basis of written stipulations of fact and jointly filed exhibits. Their dispute concerns the amount due the plaintiffs from the insurer arising from damage to their residence in a windstorm on July 10, 1989.
The stipulation of facts establishes that the plaintiff paid the insurer a premium for replacement cost coverage for losses to their insured dwelling subject to the terms limitations and conditions of the policy, and that this coverage was in effect on the date of the loss. The stipulation further states that representatives of the insurer and of the plaintiffs "met and agreed upon estimates for the replacement cost of the covered damages to the dwelling, depreciation and actual cash value of the damage to the dwelling suffered in the windstorm" and reflected the "figures agreed upon" in a property loss worksheet in which separate dollar values were assigned for replacement cost and depreciation for sixteen items. The parties have stipulated that the parties agreed that the replacement cost of the damage was $20,642.61 and that the actual cash value of the damage was $17,156.00. On July 29, 1989, Allstate paid the plaintiffs $17,156.00. The limit of liability for damage to the premises was $90,000.00.
The insurance contract provides, inter alia, that Allstate "will not pay more than the actual cash value of the damage until the repair or replacement is completed." By a letter dated October 24, 1989, the plaintiffs' representative advised the insurer that all repairs were completed and requested "the release of the withheld depreciation being held by your Company." (Ex. 4).
The plaintiffs presented evidence to the insurer that they had spent $9,083.00 for repairs performed by Brunski Building CT Page 11535 Company. They presented no evidence to the insurer of any other expenditures for repairs or replacement.
The plaintiffs take the position that pursuant to their contract of insurance, the insurer is required to pay them the difference between the estimates for the replacement cost of the covered damage and the $17,156.00 already paid to them, that is $3,486.61. The insurer's position is that it has paid all money due pursuant to the terms of the contract of insurance.
The insurance policy at issue provides in relevant part a follows:
 Sec. 5(b) Loss to dwelling structures insured under the Dwelling Protection coverage will be settled by one of the following methods:
 1) Replacement Cost. This means there will not be a deduction for depreciation. In making a replacement cost settlement, payment will not exceed the smallest of the following amounts:
 a) the replacement cost of any part of the dwelling damaged with equivalent material on the same premises;
 b) the amount actually and necessarily spent to repair or replace the damaged dwelling; or
 c) the limit of liability applying to the dwelling.
 Allstate will not pay more than the actual cash value of the damage until the repair or replacement is completed.
 2) Actual Cash Value. This means there may be a deduction for depreciation. If you decide not to repair or replace the damaged property, settlement will be on an actual cash value basis, not to exceed the limit of liability applying CT Page 11536 to the dwelling. You may make claim within 180 days after the loss for any additional payment on a replacement costs basis.
The plaintiffs' view is that the above contract provision should be read as establishing a settlement procedure by which claimant and the insurer are bound by the replacement cost estimated at the time the actual cash value is paid to the insured, regardless of the actual cost eventually incurred to repair a damaged premises.
This interpretation is not supported by the actual provisions of the insurance contract. It is well settled that where the terms of insurance contracts are clear and unambiguous they must be construed according to their plain meaning, like other contracts Izzo v. Colonial Penn Insurance Co., 203 Conn. 305,309, 524 A.2d 641 (1987); and that the terms of the policy must be given their natural and ordinary meaning, id.: Gottesman v. Aetna Ins. Co., 177 Conn. 631, 634, 41B A.2d 944 (1979); Lyon v. Aetna Casualty Surety Co., 140 Conn. 304, 307 99 A.2d 14
(1953). It is necessary to construe the contract as a whole considering all relevant portions together, and giving each provision effect, without eliminating any. clause as meaningless Lar-rob Bus Corp. v. Fairfield, 170 Conn. 397, 407 (1976) Texaco, Inc. v. Rogow, 150 Conn. 401, 408 (1963); Sturtevant v. Sturtevant, 146 Conn. 644, 648, 153 A.2d 828 (1959).
Read as whole, the insurance provision set forth above provides for initial payment of actual cash value, after which the insured has an option whether to undertake repairs or replacement. If repair is elected, the insured must make a claim within 180 days after the loss for any additional payment on replacement cost basis. In that situation, the insurer is required pursuant to Sec. 5(b)(1)(a-c) to pay the smallest of the following amounts: "a) the replacement cost of any part of the dwelling damaged with equivalent material on the same premises b) the amount actually and necessarily spent to repair or replace the damaged dwelling; or c) the limit of liability applying to the dwelling."
The uncontroverted evidence was that the smallest of the three amounts according to the above definitions was the actual amount spent to repair the damaged dwelling. While the insured argues that he may have "spent" more than the $9,083.00 paid to CT Page 11537 Brunski Building Company by doing some work himself, the record is devoid of any substantiation of the extent or value of any such expenditure.
The plaintiffs' favored construction of the insurance contract, by which they assert that the insurer should be bound to its estimate of replacement cost regardless of the actual cost to repair, would render meaningless most of the above-cited text of Sec. 5(b)(1)(a-c). By providing that it would pay the losses of a) the replacement cost or b) the amount actually spent, the insurer quite clearly did not obligate itself to pay an estimate replacement cost higher than the amount spent for repairs.
The insurer has paid the plaintiffs in excess of the amount due under the terms of the replacement coverage in their policy and they have failed to prove entitlement to any further benefits.
Judgment shall enter in favor of the defendant, which shall recover its court costs.
Beverly J. Hodgson Judge of the Superior Court