[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTIONS FOR SUMMARY JUDGMENT BYPLAINTIFF AND DEFENDANT HARTFORD FIRE INSURANCE COMPANY
The plaintiff commenced this lawsuit against the defendants Royal Insurance Company, the Hartford Fire Insurance Company ("Hartford"), Atlantic Mutual Insurance ("Atlantic"), and Centennial Insurance Company ("Centennial") claiming coverage under various policies issued by those defendants for property damage allegedly caused by the leaking of oil from an underground storage tank located on the plaintiff's real property at 300 Smith Street, Middletown, Connecticut. That property was the site of a diesel engine facility, which was built in 1976. When the facility was built an underground oil separator tank was installed by J. H. Hogan, Inc. The purpose of the tank was to collect oil and water, separate the water from the oil through the use of hydraulic pressure, and to permit the water to be discharged into the public sanitary sewer while the oil was collected for off site disposal. The tank was tied into a drainage system whereby floor drains in the main building on the property ran by pipes to the tank.
The tank had been in operation for approximately fifteen years when, on April 30, 1991, the plaintiff discovered that "the unused access ports were not sealed and that pollutants and contaminants had been continuously escaping into the ground since 1976." Revised Complaint ¶ 5. The plaintiff has alleged in an action against J.H. Hogan, Inc. that the oil seeped out into the soil surrounding the tank because J.H. Hogan, Inc. had either failed to seal outlet holes in the tank, or had sealed those holes improperly. The plaintiff reported the spill to the Department of Environmental Protection (DEP) and, thereafter the plaintiff excavated and CT Page 1626 removed a portion of the contaminated soil under the supervision of the DEP. The plaintiff has alleged that it has and will incur certain expenses in connection with the clean-up of the property, which entailed excavation and disposal of the contaminated soil and that the contamination has rendered the property unsalable.
The plaintiff was insured under the policies of different defendants over the sixteen year period relevant to this case. For the first eight years, September 10, 1976 to September 10, 1984, the plaintiff was insured by the defendant Royal Insurance Company. Centennial and Atlantic, which are related insurance companies, insured the plaintiff from September, 1988 until December 31, 1991.
Hartford provided first party property insurance coverage to the plaintiff from April, 1984 through September 1, 1988 under four separate policies.
All of the defendants have moved for summary judgment. In response to said motions, the plaintiff filed motions for summary judgment against each defendant. None of the parties have claimed that there are contested issues of fact. The plaintiff and the defendants all claim that they are entitled to a judgment as a matter of law based on their interpretations of the insurance policies at issue.
Hartford has asserted the following five grounds in support of its Motion for Summary Judgment: a) the loss claimed by the plaintiff was not a loss to property covered by the insurance policies issued by Hartford; b) the policies specifically exclude coverage for the loss claimed by the plaintiff; c) the plaintiff failed to file suit within twelve months of the inception of the loss and is thereby barred from filing suit; d) the loss did not occur during the policy periods and, therefore, coverage is not triggered under the policies; and e) the plaintiff failed to comply with the requirements of the policies.
This court finds that Hartford is entitled to judgment as a matter of law based on the first two grounds, that is, that the loss was not covered by the insurance policies. Therefore, there is no need to consider the remaining issues raised by Hartford.
Both the plaintiff and Hartford agree that the pertinent portion of each of the four policies at issue with respect to property covered is Section I — PROPERTY COVERED, a portion of the Special Building Form section of the policy. That section CT Page 1627 provides:
 COVERAGE A — BUILDINGS: Buildings or structures shall include attached additions and extensions; fixtures, machinery and equipment constituting a permanent part of and pertaining to the service of the buildings; materials and supplies intended for use in construction, alteration or repair of the building or structures; yard fixtures; personal property of the named insured used for the maintenance or service of the described buildings, including fire extinguishing apparatus, outdoor furniture, floor coverings and appliances for refrigerating, ventilating, cooking, dishwashing and laundering (but not including other personal property in apartments or rooms furnished by the named insured as landlord); all while at the described premises.
The policies in question also provide:
 SECTION II — PROPERTY NOT COVERED. This policy does not cover: . . . B. The costs of excavations, grading or filling; foundations of buildings, machinery, boilers or engines which foundations are below the undersurface of the lowest basement floor, or where there is no basement below the surface of the ground; pilings, piers, pipes, flues, and drains which are underground, pilings which are below the watermark.
. . .
 D. Lawns, outdoor trees, shrubs and plants, except as provided in the Extensions of Coverage.
The terms of an insurance policy are to be construed in accordance with the general rules of contract construction. HeymanAssociates No. I v. Insurance Co. of Pennsylvania, 231 Conn. 756,770, (1995). If the terms of the policy are clear and unambiguous, then the language must be accorded its natural and ordinary meaning. Heyman Associates No. I v. Insurance Co. ofPennsylvania, supra. "`However, [w]hen the words of an insurance contract are, without violence, susceptible of two [equally responsible] interpretations, that which will sustain the claim and cover the loss must, in preference, be adopted. Raffel v. TravelersIndemnity Co., 141 Conn. 389, 392, 106 A.2d 716 [1954]; see also 4 CT Page 1628 [S.] Williston, Contracts (3d Ed. [1961]) § 621.' (Internal quotation marks omitted.) Griswold v. Union Labor Life Ins Co.,186 Conn. 507, 512-13, 442 A.2d 920 (1982); see Hammer v.Lumberman's Mutual Casualty Co., 214 Conn. 573, 583-84,573 A.2d 699 (1990). `[T]his rule of construction favorable to the insured extends to exclusion clauses.' Griswold v. Union Labor Life InsCo., supra, 514; Smedley Co v. Employers Mutual Liability Ins. Co.,143 Conn. 510, 513, 123 A.2d 755 (1956)." Heyman Associates No. Iv. Insurance Co. of Pennsylvania, supra.
Even though ambiguities in insurance policies are to be construed in a manner most favorable to the insured, when the policy language is plain, then no such construction is required.Izzo v. Colonial Penn Ins. Co., 203 Conn. 305, 309-310,524 A.2d 641 (1987); Heyman Associates No. I v. Insurance Co. ofPennsylvania, supra.
A court will not torture words to import ambiguity into an insurance contract where ordinary meaning leaves no room for ambiguity simply because lawyers or laymen contend for different meanings. Downs v. National Casualty Company, 146 Conn. 490,152 A.2d 316 (1959).
Each of the four policies in question cover personal property and Buildings. No one contends that the plaintiff suffered a loss to personal property. However, the plaintiff contends that the oil tank was an attached addition or extension of the building or buildings on the premises within the meaning of the policy provision which provides that, "Buildings or structures shall include attached additions or extensions." This contention lacks merit. The fact that the oil tank was connected to the building on the premises by an underground drain does not make it an "addition" or "extension" to a building or structure within the ordinary meaning of those terms. Moreover, the plaintiff is not seeking to recover for any loss to the oil tank. Rather, it is seeking to recover its costs for excavating and cleaning up the land surrounding the buildings and the tank on the premises.
None of the policies in question cover damage to land. Moreover, all of the policies specifically do not cover the cost of excavations. The policies in effect in 1986-87 and 1987-88 contained the following language:
The following is added to the Debris Removal clause: CT Page 1629
 This policy does not cover land (including land on which covered property is located) or water.
Based on the policy language set forth above it appears that the policies in question where meant to cover only losses to buildings, fixtures to those buildings and personal property. Loss to land underneath or around the insured buildings is not covered under the policies.
The plaintiff also claims that it is entitled to recover under all of the policies' "Debris Removal" provisions. All four of the policies provide:
 When insurance under this policy covers "Building(s)", such insurance shall cover in accordance with the following description of coverage. Debris Removal: This policy covers expense incurred in the removal of debris of the property covered hereunder which may be occasioned by loss by a peril not otherwise excluded.
The plaintiff relies on the case of Lexington InsuranceCompany v. Ryder System, Inc., 142 Ga. App. 336, 234 S.E.2d 839
(1977) to support its contention that the Debris Removal portion of the policies at issue extend to the removal of oil from the ground. In that case the court held that a first-party property insurance carrier whose policy provided debris removal coverage had to bear the cost of removing oil from the ground into which oil had escaped. The policy at issue in Lexington was an "all-risk" property insurance policy that covered all personal property owned or leased by the insured. In addition, the policy had been endorsed to include "oil and pipe lines" as covered property. A large quantity of oil leaked out of underground storage tanks into the surrounding soil. The insurer paid the insured the value of the lost oil, but denied the insured's claim for the cost of removing the oil from the ground. The court held that the debris removal port on of the policy required the insurer to pay for the removal of the oil from the soil. The court based its decision on the language of the policy, which provided that the company would pay for the "removal of debris formerly an insured part of the property and no longer suitable for the purpose for which it was intended." The court further held that "the escaped oil which had contaminated the surrounding earth is debris, and its removal is compensable because as oil in storage it was insured." CT Page 1630
The court in Lexington defined "debris" as meaning "merely waste material resulting from the destruction of some article." Debris is generally understood to be "remains of something broken down or destroyed." Webster's Ninth New Collegiate Dictionary, p. 328. The oil at issue in Lexington had not been destroyed, it had merely escaped. Therefore, it is difficult to fully understand the ruling or the court in that case. In any event, Lexington is clearly distinguishable from the present case. Here oil in pipes is not covered property under the policies in question and the oil at issue was not the debris, that is, the destroyed remains, of any covered property. Therefore, the Debris Removal portion of the policies does not provide coverage for the plaintiff's losses.
The two policies covering the periods from September 1, 1986 to September 1, 1987 and September 1, 1987 to September 1, 1988, each contain an additional form Amendatory Endorsement, which provides:
6. Debris Removal
The following is added to the Debris Removal clause:
 This Debris Removal coverage does not apply to the cost to extract pollutants from land or water, or to remove, restore or replace polluted land or water.
 7. Pollutants Clean Up and Removal
The following is added:
 This insurance covers expense to extract pollutants from land or water at the described premises if the release, discharge or dispersal of the pollutants is occasioned by loss caused by any of the perils insured against in this policy during the policy period. . . .
 Pollutants means any solid, liquid, gaseous or thermal irritant, or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.
 8. Pollution Exclusion
 The following exclusion is added to the Special Building form, Special Personal Property Form, Special Coverage Endorsement and special Coverage endorsement — Builders' CT Page 1631 Risk:
 This policy does not insure under this form against loss caused by the release, discharge or dispersal of pollutants unless the release, discharge or dispersal is itself caused by fire, lightning, aircraft, explosion, riot, civil commotion, smoke, vehicles, windstorm or hail to property contained in any building, vandalism, malicious mischief or leakage or accidental discharge from automatic fire protective systems. But if loss by any of the above twelve perils ensues, then this Company shall be liable for only loss caused by the ensuing
Based on the foregoing language of the two later policies, it is clear that the Debris Removal clause does not apply to the cost to extract pollutants from land or water. In addition, those policies contain an added exclusion under which the discharge of pollutants is covered by the policy only if that discharge is caused by fire, lightning, aircraft, explosion, or the other perils set forth above. There is no claim that any of those perils caused the oil to escape from the tank in this case.
The plaintiff claims that the later policies' definition of "pollutants" set forth above does not include petroleum-based products and that the words "irritant" and "contaminant" used in that definition are overly broad and ambiguous. In HeymanAssociates No. I v. Insurance Co. of Pennsylvania, supra, the Connecticut Supreme Court recently construed an insurance policy which contained an exclusion for damage "arising out of the . . . discharge, dispersal, release or escape of pollutants" and defined pollutants in a manner almost identical to the definition used in the later Hartford policies as follows:
 Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste material.
The Court held that fuel oil was included in the above definition of "pollutants" as a matter of law because the oil was clearly a liquid irritant or contaminant within the commonly accepted meanings of those words and within the statutory definition of "pollutant" or "pollution" found in Connecticut General Statutes § 22a-451(a).[1]
Hartford has also claimed that it is not liable for the loss CT Page 1632 sustained by the plaintiff because such loss is specifically excluded under the policies in question. All four of the Hartford insurance policies contain the following additional exclusion:
 A. [Loss] caused by or resulting from error, omission or deficiency in design, specifications, workmanship or materials. This exclusion does not apply to loss by fire, lightning, wind, hail, aircraft, vehicles, smoke, discharge from fire protective or building service equipment, explosion, riot or civil commotion to the extent that such perils are insured against in this policy.
The plaintiff has instituted suit against the contractor who installed the oil tank, J.H. Hogan, Inc. and has taken the position in that case that the oil from the tank escaped into the soil surrounding the tank because J.H. Hogan, Inc. failed to seal or failed to properly seal inlet and outlet holes in the tank. The failure to seal or properly seal holes constitutes an error, omission or deficiency in design, specifications, workmanship or material within the meaning of the above exclusion.
The defendant Hartford is entitled to summary judgment on the Third and Fourth Counts of the Revised Complaint because it is not liable for the plaintiff's loss based on the language of the policies which is issued to the plaintiff. For the reasons set forth above Hartford's Motion for Summary Judgment is granted and the plaintiff's Motion for Summary Judgment is denied.