[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTIONS FOR SUMMARY JUDGMENT BY PLAINTIFFAND DEFENDANTS ATLANTIC MUTUAL INSURANCE COMPANY AND CENTENNIALINSURANCE COMPANY
The plaintiff commenced this lawsuit against the defendants Royal Insurance Company, Hartford Fire Insurance Company, Atlantic Mutual Insurance ("Atlantic"), and Centennial Insurance Company ("Centennial") claiming coverage under various policies issued by those defendants for property damage allegedly caused by the leaking of oil from an underground storage tank located on the plaintiff's real property at 300 Smith Street, Middletown, Connecticut. That property was the site of a diesel engine facility, which was built in 1976. When the facility was built an underground oil separator tank was installed. The purpose of the tank was to collect oil and water, separate the water from the oil through the use of hydraulic pressure, and to permit the water to be discharged into the public sanitary sewer while the oil was collected for off site disposal. The tank had been in operation CT Page 1154-FF for approximately fifteen years when, on April 30, 1991, the plaintiff discovered that "the unused access ports were not sealed and that pollutants and contaminants had been continuously escaping into the ground since 1976." Revised Complaint ¶ 5. The plaintiff reported the spill to the Department of Environmental Protection (DEP) and, thereafter the plaintiff excavated and removed a portion of the contaminated soil under the supervision of the DEP. The plaintiff has alleged that it has and will incur certain expenses in connection with the clean-up of the property and that the contamination has rendered the property unsalable.
The plaintiff was insured under the policies of different defendants over the sixteen year period relevant to this case. For the first eight years, September 10, 1976 to September 10, 1984, the plaintiff was insured by the defendant Royal Insurance Company. For the next four years, April 1, 1984 to September 1, 1988, the plaintiff was insured by the defendant Hartford Insurance Company. On October 1, 1988, Centennial issued a property insurance policy to the plaintiff's corporate predecessor. Centennial and Atlantic, which are related insurance companies, continued to insure the plaintiff under policies which were essentially the same until CT Page 1154-GG December 31, 1991.
All of the defendants have moved for summary judgment. In response to said motions, the plaintiff filed motions for summary judgment against each defendant. None of the parties claim that there is a contested issue of fact. However, each party contends that they are entitled to summary judgment as a matter of law based on their reading of the insurance policies at issue.
The defendants Centennial and Atlantic have moved for summary judgment on the grounds that 1) there is no coverage under the Pollutant Clean Up and Removal Coverage portion of the relevant insurance policies; 2) there is no coverage because there was no direct physical loss of or damage to covered property; and 3) there is no coverage under several express exclusions contained in the insurance policies.
The relevant portions of the policies issued by the defendants Centennial/Atlantic provide:
Pollutant Clean up and Removal CT Page 1154-HH
 We will pay your expense to extract "pollutants" from land or water at the described premises if the release, discharge or dispersal of the "pollutants" is caused by or results from a Covered Cause of Loss that occurs during the policy period. . . .
 The most we will pay for each location under this Additional Coverage is $10,000 for the sum of all such expenses arising out of Covered Causes of Loss occurring during each separate 12 month period of this policy. This limit is in addition of the Limits of Insurance.
 "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot fumes, acids, alkalis, chemicals and waste.
 C. The CAUSES OF LOSS — SPECIAL FORM is revised as follows:
1. The exclusion of "Release, discharge or dispersal of CT Page 1154-II contaminants or pollutants" in paragraph B. 2. d. (4) is deleted.
2. The following exclusion is added:
 We will not pay for loss or damage caused by or resulting from the release, discharge or dispersal of "pollutants" unless release, discharge or dispersal is itself caused by any of the "specified causes of loss". But if loss or damage by the "specified causes of loss" results, we will pay for the resulting damage caused by the "specified cause of loss".
 "Specified Causes of Loss" means the following: Fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage form fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage; sonic boom; elevator collision.
Debris Removal CT Page 1154-JJ
 We will pay your expense to remove debris of Covered Property caused by or resulting from a Covered Cause of Loss that occurs during the policy period. . . .
 This Additional coverage does not apply to costs to (1) Extract "pollutants" from land or water; or (2) Remove, restore or replace polluted land or water.
The terms of an insurance policy are to be construed in accordance with the general rules of contract construction. HeymanAssociates No. I v. Insurance Co. of Pennsylvania, 231 Conn. 756,770, ___ A.2d ___ (1995). If the terms of the policy are clear and unambiguous, then the language must be accorded its natural and ordinary meaning. Heyman Associates No. I v. Insurance Co. ofPennsylvania, supra. "`However, [w]hen the words of an insurance contract are, without violence, susceptible of two [equally responsible] interpretations, that which will sustain the claim and cover the loss must, in preference, be adopted. Raffel v. TravelersIndemnity Co., 141 Conn. 389, 392, 106 A.2d 716 [1954]; see also 4 [S.] Williston, Contracts (3d Ed. [1961]) § 621.' (Internal CT Page 1154-KK quotation marks omitted.) Griswold v. Union Labor Life Ins Co.,186 Conn. 507, 512-13, 442 A.2d 920 (1982); see Hammer v.Lumberman's Mutual Casualty Co., 214 Conn. 573, 583-84,573 A.2d 699 (1990). `[T]his rule of construction favorable to the insured extends to exclusion clauses.' Griswold v. Union Labor Life InsCo., supra, 514; Smedley Co v. Employers Mutual Liability Ins. Co.,143 Conn. 510, 513, 123 A.2d 755 (1956)." Heyman Associates No. Iv. Insurance Co. of Pennsylvania, supra.
Even though ambiguities in insurance policies are to be construed in a manner most favorable to the insured, when the policy language is plain, then no such construction is required.Izzo v. Colonial Penn Ins. Co., 203 Conn. 305, 309-310,524 A.2d 641 (1987); Heyman Associates No. I v. Insurance Co. ofPennsylvania, supra.
The Pollutant Clean Up and Removal Coverage portion of the policies set for the above provides that the insurer will pay the insured's expense to extract "pollutants" from land or water at the described premises only if the discharge of pollutants is caused by or results from a Covered Cause of Loss that occurs during the CT Page 1154-LL policy period. The Causes of Loss portion of the policy provides that the insurer will pay for direct physical loss or damage to covered Property[1] unless the loss or damage is subject to any of the exclusions or limitations. Exclusion B (2)(i), which is set for above, provides that the insurer will not pay for damage caused by release, discharge or dispersal of "pollutants" unless same is itself caused by "specified causes of loss," which term is also set forth above. The damage claimed by the plaintiff was clearly not caused by fire, lightning, explosion, windstorm or hail, smoke, or any of the other specified causes of loss.
The plaintiff has argued that it is entitled to coverage under the policy's debris removal provision. In support of that argument it has cited the cases of Lexington Insurance Company v. RyderSystem, Inc. 234 S.E.2d 839 (Ga. 1977) and Manduca Datsun, Inc. v.Universal Underwriter's Insurance Company, 676 P.2d 1274 (Idaho App. 1984). However, the debris removal clauses of the policies at issue in those cases were different from that at issue here. The Atlantic/Centennial debris removal clause clearly states that is does not apply to the costs to extract pollutants or to remove, restore, or replace polluted land or water. CT Page 1154-MM
With respect to the debris removal clause the plaintiff has also argued that petroleum-based products which leaked in this case are not pollutants within the meaning of that clause. In HeymanAssociates No. I v. Insurance Co. of Pennsylvania, supra, the Connecticut Supreme Court recently construed an insurance policy which contained an exclusion for damage "arising out of the . . . discharge, dispersal, release or escape of pollutants" and defined pollutants in a manner almost identical to the definition used in the Atlantic/Centennial policies as follows:
 Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste material.
The Court held that fuel oil was included in the above definition of "pollutants" as a matter of law because the oil was clearly a liquid irritant or contaminant within the commonly accepted meanings of those words and within the statutory definition of "pollutant" or "pollution" found in Connecticut General Statutes § 22a-451(a).[2]
CT Page 1154-NN
Atlantic and Centennial have advanced the lack of underlying coverage apart from the Pollutant Clean Up and Removal provision as an additional ground for summary judgment. They claim that there is no underlying coverage because there is no direct physical loss or damage to covered property, the loss did not commence during the policy period, the notice was not timely, and the loss may not have been fortuitous. This Court has found that the Pollutant Clean Up and Removal coverage does not cover the plaintiff's loss and also finds that there in no underlying coverage because there was no direct physical loss or damage to covered property. Therefore, there is no need to consider the other grounds for the defendants' claim of lack of underlying coverage.
The plaintiff's claim is for its expenses in connection with the clean up of contaminated land. The policies in question provide coverage for direct physical loss or damage to coveredproperty. Covered property is defined to include a building or structure, completed additions, glass, permanently installed fixtures, machinery and equipment, outdoor fixtures, outdoor furniture, floor coverings, appliances and business personal CT Page 1154-OO property located in or on the building. Covered property does not include land or groundwater.
This court will not consider the defendants' argument that the loss was not direct or physical or the third general ground advanced to support their Motion for Summary Judgment because Atlantic and Centennial are entitled to summary judgment under the first two grounds for the reasons set forth above. Summary judgment may enter in favor of Atlantic and Centennial on the Fifth and Sixth Counts of the Revised Complaint.
For the reasons set forth above, the plaintiff's Motion for Summary Judgment as to Atlantic and Centennial is denied.
By the Court,
Aurigemma, J.