[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTIONS FOR SUMMARY JUDGMENT BYPLAINTIFF AND DEFENDANT ROYAL INSURANCE COMPANY
CT Page 1619
The plaintiff commenced this lawsuit against the defendants Royal Insurance Company ("Royal"), the Hartford Fire Insurance Company ("Hartford"), Atlantic Mutual Insurance ("Atlantic"), and Centennial Insurance Company ("Centennial") claiming coverage under various policies issued by those defendants for property damage allegedly caused by the leaking of oil from an underground storage tank located on the plaintiff's real property at 300 Smith Street, Middletown, Connecticut. That property was the site of a diesel engine facility, which was built in 1976. When the facility was built an underground oil separator tank was installed by J. H. Hogan, Inc. The purpose of the tank was to collect oil and water, separate the water from the oil through the use of hydraulic pressure, and to permit the water to be discharged into the public sanitary sewer while the oil was collected for off site disposal. The tank was tied into a drainage system whereby floor drains in the main building on the property ran by pipes to the tank.
The tank had been in operation for approximately fifteen years when, on April 30, 1991, the plaintiff discovered that "the unused access ports were not sealed and that pollutants and contaminants had been continuously escaping into the ground since 1976." Revised Complaint ¶ 5. In an action against J.H. Hogan, Inc. the plaintiff has alleged that the oil seeped out into the soil surrounding the tank because J.H. Hogan, Inc. had either failed to seal outlet holes in the tank, or had sealed those holes improperly. The plaintiff reported the spill to the Department of Environmental Protection (DEP) and, thereafter the plaintiff excavated and removed a portion of the contaminated soil under the supervision of the DEP. The plaintiff has alleged that it has and will incur certain expenses in connection with the clean-up of the property, which entailed excavation and disposal of the contaminated soil and that the contamination has rendered the property unsalable.
The plaintiff was insured under the policies of different defendants over the sixteen year period relevant to this case. For the first eight years, September 10, 1976 to September 10, 1984, the plaintiff was insured by the defendant Royal under insurance policies which were identical with respect to their language relevant to the issues in this case. Hartford insured the plaintiff from April, 1984 through September 1, 1988. Centennial and Atlantic, which are related insurance companies, insured the plaintiff from September, 1988 until December 31, 1991. CT Page 1620
All of the defendants have moved for summary judgment. In response to said motions, the plaintiff filed motions for summary judgment against each defendant. None of the parties have claimed that there are contested issues of fact. The plaintiff and the defendants all claim that they are entitled to a judgment as a matter of law based on their interpretations of the insurance policies at issue.
Royal has advanced three grounds in support of its Motion for Summary Judgment. First it alleges that the plaintiff's action against Royal is barred by the policy's twelve month suit limitation provision, or alternatively, if the loss was triggered in 1991 upon discovery of the oil contamination, then Royal was no longer on the risk. Second, Royal argues that the plaintiff's loss is not covered under its insurance policies because those policies do not cover damage or loss to land. Finally, Royal contends that to the extent the plaintiff has incurred cleanup costs as a result of its compliance with any ordinance, law or regulation, there is no coverage.
This court finds that Royal is entitled to summary judgment based on its second argument, and, therefore, has not considered the other arguments advanced.
Both plaintiff and Royal agree that the pertinent portions of the policies in question are, "Property Covered and Extensions of Coverage — Part I" and "Special Extended Coverage Endorsement Applicable to Part I (Buildings Only)."
The relevant portions of "Property Covered and Extensions of Coverage — Part I" are:
1. This policy is extended to insure against direct loss by:
 WINDSTORM AND HAIL EXPLOSION RIOT, RIOT ATTENDING A STRIKE, CIVIL COMMOTION AIRCRAFT AND VEHICLES SONIC SHOCK WAVES SMOKE VANDALISM AND MALICIOUS MISCHIEF SPRINKLER LEAKAGE ELEVATOR COLLISION CT Page 1621 ACCIDENT TO AN OBJECT (STEAM BOILER, FIRED PRESSURE VESSEL OR ELECTRIC STEAM GENERATOR)
 Insurance under Part I covers only: (a) the building(s) described in the Schedule of Part I and for which an amount of insurance is shown; (b) contents at a location described in the Schedule of Part I and for which an amount of insurance is shown; (c) the property stated to be covered in any endorsement listed in the Schedule of Part I under the caption "Endorsements Covering Personal Property."
 1. BUILDINGS: When this policy covers a building, such insurance shall include the building structure (and its foundations) and additions and extensions attached thereto; all permanent fixtures machinery and equipment forming a part of and pertaining to the service of the building; flag poles, fences and other yard fixtures; personal property of the Insured as landlord used for the maintenance or service of the building and including fire extinguishing apparatus, floor coverings, refrigerating, ventilating, cooking, dishwashing and laundering equipment, wherever on the premises of such building. . . .
 3. PROPERTY EXCLUDED: This policy does not cover under Part I loss or damage to (a) trees, shrubs, plants and lawns . . ., (b) land values, (c) cost of excavation, grading or filling . . . . . .
 9. DEBRIS REMOVAL: this policy, subject to all its terms and provision, covers expense incurred in the removal of debris of the buildings and contents covered under Part I occasioned by loss caused by any of the perils insured against under Part I, all as defined and limited in this policy, . . .
The "Special Extended Coverage Endorsement applicable to Part I (Buildings Only)" provides in pertinent part:
1. COVERAGE
 In consideration of the premium for this endorsement and subject to the provisions herein and in the policy to CT Page 1622 which this endorsement is attached including endorsements thereon, this policy is hereby further extended to insure against ALL OTHER RISKS OF DIRECT PHYSICAL LOSS, EXCEPT AS HEREIN PROVIDED.
 This endorsement applies under Part I only to buildings described in the Schedule of Part I and to which this endorsement is stated to apply.
The terms of an insurance policy are to be construed in accordance with the general rules of contract construction. HeymanAssociates No. I v. Insurance Co. of Pennsylvania, 231 Conn. 756,770, ___ A.2d ___ (1995). If the terms of the policy are clear and unambiguous, then the language must be accorded its natural and ordinary meaning. Heyman Associates No. I v. Insurance Co. ofPennsylvania, supra. "`However, [w]hen the words of an insurance contract are, without violence, susceptible of two [equally responsible] interpretations, that which will sustain the claim and cover the loss must, in preference, be adopted. Raffel v. TravelersIndemnity Co., 141 Conn. 389, 392, 106 A.2d 716 [1954]; see also 4 [S.] Williston, Contracts (3d Ed. [1961]) § 621.' (Internal quotation marks omitted.) Griswold v. Union Labor Life Ins Co.,186 Conn. 507, 512-13, 442 A.2d 920 (1982); see Hammer v.Lumberman's Mutual Casualty Co., 214 Conn. 573, 583-84,573 A.2d 699 (1990). `[T]his rule of construction favorable to the insured extends to exclusion clauses. Griswold v. Union Labor Life InsCo., supra, 514; Smedley Co v. Employers Mutual Liability Ins. Co.,143 Conn. 510, 513, 123 A.2d 755 (1956)." Heyman Associates No. Iv. Insurance Co. of Pennsylvania, supra.
Even though ambiguities in insurance policies are to be construed in a manner most favorable to the insured, when the policy language is plain, then no such construction is required.Izzo v. Colonial Penn Ins. Co., 203 Conn. 305, 309-310,524 A.2d 641 (1987); Heyman Associates No. I v. Insurance Co. ofPennsylvania, supra.
A court will not torture words to import ambiguity into an insurance contract where ordinary meaning leaves no room for ambiguity simply because lawyers or laymen contend for different meanings. Downs v. National Casualty Company, 146 Conn. 490,152 A.2d 316 (1959).
The plaintiff argues that the Special Extended Coverage Endorsement, set forth in part above, covers all risks, and CT Page 1623 therefore, Royal is liable for the losses incurred in extracting the oil from the soil. However, while that portion of the policy may insure against all risks, it clearly does not insure all of the plaintiff's property against all risks. The Special Extended Coverage Endorsement expressly states that it is limited to buildings only. The policies' definition of "buildings", set forth above, clearly does not include land.
The plaintiff also argues that the Debris Removal section of the policy provides coverage for its loss in this case. That section covers "expense incurred in the removal of debris of thebuildings and contents covered under Part I occasioned by loss caused by any of the perils insured against under Part I, all as defined and limited in this policy, . . ." Under the policies' definition of "buildings," set forth above, a "building" includes additions or extensions to buildings or structures. The plaintiff contends that the oil tank was an attached addition or extension of the building or buildings on the premises within the meaning of that definition. This contention lacks merit. The fact that the oil tank was connected to the building on the premises by an underground drain does not make it an "addition" or "extension" to a building or structure within the ordinary meaning of those terms.
The policy definition of "building" also includes, "flagpoles, fences and other lawn fixtures." The plaintiff also argues that the underground oil tank constituted a lawn fixture within the foregoing definition. By listing several types of lawn fixtures within the definition, the policy language limits lawn fixtures to items like flagpoles and fences. Thus, an ornamental well, or lawn swing, both of which are generally located on a lawn, might be included within the policy meaning of "lawn fixture." The oil tank in question was underground. Therefore, it could not have been located on a lawn, because a lawn is "ground (as around a house or in a garden or park) that is covered with grass and is kept mowed."Webster's Collegiate Dictionary, Tenth Edition, p. 678.
The plaintiff relies on the case of Lexington InsuranceCompany v. Ryder System, Inc., 142 Ga. App. 336, 234 S.E.2d 839
(1977) to support its contention that the Debris Removal portion of the policies at issue extends to the removal of oil from the ground. In that case the court held that a first-party property insurance carrier whose policy provided debris removal coverage had to bear the cost of removing oil from the ground into which oil had escaped. The policy at issue in Lexington was an "all-risk" property insurance policy that covered all personal property owned CT Page 1624 or leased by the insured. In addition, the policy had been endorsed to include "oil and pipe lines" as covered property. A large quantity of oil leaked out of underground storage tanks into the surrounding soil. The insurer paid the insured the value of the lost oil, but denied the insured's claim for the cost of removing the oil from the ground. The court held that the debris removal portion of the policy required the insurer to pay for the removal of the oil from the soil. The court based its decision on the language of the policy, which provided that the company would pay for the "removal of debris formerly an insured part of the property and no longer suitable for the purpose for which it was intended." The court further held that "the escaped oil which had contaminated the surrounding earth is debris, and its removal is compensable because as oil in storage it was insured."
The court in Lexington defined "debris" as meaning "merely waste material resulting from the destruction of some article." Debris is generally understood to be "remains of something broken down or destroyed." Webster's Ninth New Collegiate Dictionary, p. 328. The oil at issue in Lexington had not been destroyed, it had merely escaped. Therefore, it is difficult to fully understand the ruling of the court in that case. In any event, Lexington is clearly distinguishable from the present case. Here oil in pipes is not covered property under the policies in question and the oil at issue was not the debris, that is, the destroyed remains, of any covered property. Therefore, the Debris Removal portion of the policies does not provide coverage for the plaintiff's losses.
Even if the oil tank does constitute a "building" within the meaning of the policies in question, which might, arguably, make the escaped oil "debris of covered property" within the meaning of the policies, the Debris Removal portion of the policies would still not provide coverage for the plaintiff's loss. That section of the policies expressly provides coverage only where the debris is occasioned by a loss specified in Part I of the policy. Such losses, set forth above, include fire, windstorm, explosion, smoke, vandalism, but clearly do not include the plaintiff's loss, which was caused by negligent workmanship.
For the reasons set forth above, summary judgment may enter in favor of Royal and against the plaintiff on the First and Second Counts of the Revised Complaint.
By the Court, CT Page 1625 Aurigemma, J.