THEATRE GUILD PRODUCTIONS, INC., Respondent, *v.* INSURANCE CORPORATION OF IRELAND et al., Appellants.

First Department, February 24, 1966.

*Daniel Huttenbrauck* of counsel (*Richard C. Browne* with him on the brief; *Mendes & Mount,* attorneys), for appellants.

*Harold J. Sherman* of counsel (*Clifford Forster* with him on the brief; *Fitelson & Mayers,* attorneys), for respondent.

McNALLY, J. This is an appeal from an order and judgment granting plaintiff's motion for summary judgment in the sum of $166,704.51.

The question presented on stipulated facts is the scope of coverage of five policies of insurance. Plaintiff was the producer of the play entitled " Dear Me, The Sky Is Falling ". Gertrude Berg was the star performer. The show opened March 2, 1963. Defendants issued the policies effective January 26,

1963 and expiring July 26, 1963. The relevant provisions thereof are:

" 1. This insurance is to pay the insured in the event of the inability of the insured artist [Gertrude Berg] to appear in the insured production, directly in consequence of her suffering any personal accident or sickness or in the event of the occurrence of her death or total disability *during the period of insurance.*

" 2. The amount of insurance payable hereunder is $1,500. per performance and the Underwriter's liability shall be limited to an aggregate of $50,000.00 *for the period of insurance.*" (Emphasis supplied.)

On July 11, 1963 Gertrude Berg became ill and disabled within the meaning of the policies. By reason of such disability the show closed on July 22, 1963. The disability continued until and existed on October 15, 1963, at the commencement of this action. Defendants concede liability to July 26, 1963, the expiration date of the policies, at the rate of $1,500 for each nonappearance of Gertrude Berg less the deductible sum of $1,500. Plaintiff contends for additional payment for nonappearances subsequent to July 26, 1963 and has been awarded judgment accordingly by the learned Justice at Special Term.

Plaintiff's insurable interest derived from its employment of Gertrude Berg as the star of the production. (Insurance Law, § 146, subd. 2.) The economic success of the production depended on the effective appearance and performance of Gertrude Berg. Towards the end of insuring against the economic loss consequent on her nonappearance, plaintiff sought and obtained the policies herein providing for stipulated indemnity for the nonappearance of Gertrude Berg due to specified causes during the period of insurance.

The production of the show might terminate because it was unprofitable and a financial failure or other reasons unrelated to the nonappearance of the star. In that event, the subsequent disability or death of the artist would not be of financial concern to the plaintiff. The insurance contemplated a going production dependent on the services and appearance of the artist. It was intended to indemnify against financial loss in the course of " the insured production " resulting from " the inability of the insured artist to appear " during the period of insurance.

The relevant intent is that expressed in the policies of insurance. The surrounding circumstances at the inception of the policies serve to define that intent within the framework of the content of the policies. " Our guide is the reasonable expecta-

tion and purpose of the ordinary business man when making an ordinary business contract. It is his intention, expressed or fairly to be inferred, that counts." (*Bird* v. *St. Paul Fire & Marine Ins. Co.*, 224 N. Y. 47, 51.)

The primary and excess cover notes' captions describing the coverage as "non appearance coverage" are to be read and given effect in ascertaining the scope and intent of the coverage. (13 Appleman, Insurance Law and Practice, § 7387.)

The event insured against was the nonappearance of the star in the production. Her inability to appear under the terms of the policies must be directly in consequence of personal accident or sickness or the occurrence of her death or total disability, during the period of insurance. The insurer's liability in the event of the nonappearance of the star is limited to $1,500 a performance and to an aggregate of $50,000 "for the period of insurance". Every clause or word in an insurance contract is deemed to have some meaning. (*Finery Silk Stocking Co.* v. *Ætna Ins. Co.*, 227 App. Div. 39, 42.)

We construe said provisions to provide coverage for the non-appearance of the insured artist in the insured production during the six-month term of the policies.

The policies clearly and unambiguously limit the indemnity to $1,500 for each nonappearance of the star at a performance occurring during the period of insurance. Thereby the insured was to be paid in the event of the inability of the star to appear in the insured production because of certain specified conditions including accident, sickness, death or disability occurring after the effective date and while the policies were in full force and effect. The insured event was the star's nonappearance; her health was not insured. Sickness was one of the specified factors giving rise to indemnity in the event it caused nonappearance.

The insurance here involved is not to be confused with a policy providing an assured indemnity for loss resulting from disability because of illness or accident. In such case the illness per se occurring during the policy period affects the assured so long as it persists and the contract is one for indemnity during the illness even though it extends beyond its termination date. (See *Greiper* v. *National Cas. Co.*, 1 A D 2d 806.) Here, the nonappearance of the artist could affect the plaintiff only during the course of its production of the show. The six-month term represented the parties' estimate of the duration of the show or the agreed period of exposure. The parties might have provided for indemnity arising from nonappearance during the run of the show, but they did not, and there are no circumstances

supporting the intent to so do. In short, the coverage here involved is for nonappearance "in the insured production * * * during the period of insurance " and not for disability of the artist by reason of sickness or accident.

There may be no recovery under this policy unless the illness of the artist, which brought the liability of the insurer into play, occurred some time between January 26, 1963 and July 26, 1963. There is no dispute about that — it is conceded. Accordingly, the words " during the period of insurance," as they appear in paragraph 1 of the policy, mean during the period beginning January 26 and ending July 26, 1963. Paragraph 2 also contains the words " for the period of insurance " and it is the construction to be given to those words in that paragraph that brings this lawsuit. It seems to be clear that we must construe the words " for the period of insurance," as appears in the second paragraph, in the same manner as it is construed in paragraph 1, and hold that payments are to be made only up to July 26, 1963. We test this conclusion by reading paragraph 2 as though the sentence were terminated after the figure $50,000, i.e., by striking from paragraph 2 the words " for the period of insurance." Reading it in this manner would give to the plaintiffs everything they now claim they are entitled to receive, i.e., all payments until the $50,000 maximum is reached. However, the words " for the period of insurance " are added. Being added they must be given some meaning, and the only meaning that can be given would be one of limitation, as is given to the same words as written in paragraph 1. If we do not give it that meaning, they are meaningless.

The order and judgment should be modified, on the law, to the extent and directing judgment in the sum of $24,000, with costs and interest, pursuant to paragraph 23 of the stipulation of admitted and agreed facts, and, as so modified, affirmed, with costs to defendants-appellants.

RABIN, J. P., STEVENS, STEUER and WITMER, JJ., concur.

Order and judgment unanimously modified, on the law, to the extent of directing judgment in the sum of $24,000, with costs and interest, pursuant to paragraph 23 of the stipulation of admitted and agreed facts, and, as so modified, affirmed, with $50 costs to defendants-appellants. Settle order on notice.