JANE CRILLY SCHULTZ, ADMINISTRATRIX (ESTATE OF
ANDREW G. SCHULTZ) *v.* HARTFORD FIRE INSURANCE
COMPANY ET AL.
(13668)

HEALEY, SHEA, GLASS, COVELLO and HULL, Js.

Argued November 2, 1989—decision released February 13, 1990

*Leo Gold,* for the appellant (plaintiff).

*Paul E. Pollock,* with whom, on the brief, was
*Thomas P. Parrino,* for the appellee (defendant Hart-
ford Accident and Indemnity Company).

ARTHUR H. HEALEY, J. The principal issue in this case is whether an endorsement to an owners', landlords' and tenants' liability insurance policy amends or adds to the policy provisions defining insured premises. The trial court, *Ryan, J.,* found the definition of insured premises in the endorsement controlling and interpreted the provision so as to deny the plaintiff relief under the insurance policy. From this judgment, the plaintiff appealed to the Appellate Court. Pursuant to Practice Book § 4023, we transferred the case to this court. We find no error.

The parties stipulated to the following facts. On August 15, 1978, Phyllis G. Olschan transferred title and delivered possession of the premises known as 416 Erskine Road, Stamford (Stamford property), to the plaintiff and her husband. On September 4, 1978, the plaintiff's decedent, Andrew G. Schultz, eight years of age, was severely injured as a result of the detonation of a hand grenade that had been left on the premises. Andrew G. Schultz died about three weeks later as a result of these injuries. The plaintiff was appointed administratrix of the estate of Andrew G. Schultz and instituted an action against Olschan to recover for the bodily injuries suffered by Andrew G. Schultz and his subsequent wrongful death by reason of the negligence of Olschan. On March 13, 1985, the plaintiff obtained a judgment against Olschan in the amount of $100,000 in damages. Olschan, however, failed to pay any part of that judgment.

The plaintiff thereafter brought an action, pursuant to General Statutes § 38-175,[1] in two counts against

[1] General Statutes § 38-175 provides: "LIABILITY OF INSURER UNDER LIABILITY POLICY. Each insurance company which issues a policy to any person, firm or corporation, insuring against loss or damage on account of the bodily injury or death by accident of any person, or damage to the prop-

the Hartford Fire Insurance Company and the Hartford Accident and Indemnity Company to collect the unpaid judgment. In count one of the complaint, the plaintiff alleged, inter alia, that Olschan had in effect on the day of the accident a liability insurance policy, number 31 RA 607453, issued by the Hartford Fire Insurance Company. In count two, the plaintiff alleged that Olschan had in effect on the day of the accident an insurance policy, number 31 OLT 195229, issued by the Hartford Accident and Indemnity Company.[2] The defendants denied these allegations and pleaded, by way of special defenses as to count one, that policy number 31 RA 607453 was cancelled prior to the accident involving Andrew Schultz. As to the second count, they denied that policy number 31 OLT 195229 extended coverage to the Stamford property as "insured premises." As to both counts, they denied that they had in effect a policy covering the Stamford property on the day of the accident. Prior to trial, however, the par-

---

erty of any person, for which loss or damage such person, firm or corporation is legally responsible, shall, whenever a loss occurs under such policy, become absolutely liable, and the payment of such loss shall not depend upon the satisfaction by the assured of a final judgment against him for loss, damage or death occasioned by such casualty. No such contract of insurance shall be cancelled or annulled by any agreement between the insurance company and the assured after the assured has become resposible for such loss or damage, and any such cancellation or annulment shall be void. Upon the recovery of a final judgment against any person, firm or corporation by any person, including administrators or executors, for loss or damage on account of bodily injury or death or damage to property, if the defendant in such action was insured against such loss or damage at the time when the right of action arose and if such judgment is not satisfied within thirty days after the date when it was rendered, such judgment creditor shall be subrogated to all the rights of the defendant and shall have a right of action against the insurer to the same extent that the defendant in such action could have enforced his claim against such insurer had such defendant paid such judgment."

[2] Although the named insureds, on the Hartford Accident and Indemnity Company policy No. 31 OLT 195229, were Lillian Goldman and Phyllis G. Olschan, the plaintiff brought suit on this policy against only Olschan.

ties stipulated that the only policy in effect at the time of the accident was policy number 31 OLT 195229 issued by the Hartford Accident and Indemnity Company.

No evidence was presented to the trial court. The trial court held that endorsement L-3038-2 to the policy defining the insured premises designated 1141 Fairfield Beach Road, Fairfield (Fairfield beach property), as the insured premises and not the Stamford property. The trial court stated that the parties' true intentions to insure only the Fairfield beach property were evident. The trial court found that the endorsement listed a one family dwelling as the "designated premises," and that that endorsement applied only to the Fairfield beach property. Moreover, the trial court stated that "[a]n interpretation that the alienated premises clause encompasses all premises ever alienated by [Olschan] individually, or by Lillian Goldman individually, or by both [Olschan] and Lillian Goldman jointly, would be [an] unreasonable interpretation of [the alienated premises] clause." The court concluded that the policy covered only the Fairfield beach property.

On appeal, the plaintiff contends that the trial court erred in concluding that (1) the defendant's policy did not extend coverage to the Stamford premises recently alienated by its insured, and (2) notwithstanding the designation of "alienated premises" as "insured premises" within the defendant's policy, it would be unreasonable to provide such coverage. Because we find that the endorsement amends the provision defining insured premises in the policy, we do not need to decide the plaintiff's second claim of error.

At the time of Andrew G. Schultz's accident, Olschan and Goldman, as named insureds, had in effect an insurance policy entitled "Owners', Landlords' and Tenants'

Liability Insurance." The focus of the plaintiff's claim is on the "Additional Definition" provision in the policy and the endorsement that both contain a definition of "insured premises." The policy when issued provided, inter alia, the following:

## "IV. ADDITIONAL DEFINITION

"When used in reference to this insurance (including endorsements forming a part of the policy): '*insured premises*' means (1) the premises designated in the declarations, (2) premises alienated by the *named insured* (other than premises constructed for sale by the *named insured*), if possession has been relinquished to others, and (3) premises as to which the *named insured* acquires ownership or control and reports his intention to insure such premises under this policy and no other within 30 days after such acquisition; and includes the ways immediately adjoining such premises on land." (Emphasis in original.)

The endorsement states in part: "It is agreed that the insurance applies to the *insured premises,* subject to the following additional provisions:

"1. The definition of '*insured premises*' is amended to read as follows: '*insured premises*' means the premises described below or designated in the policy as subject to this endorsement, including the ways immediately adjoining and including garages and stables incidental thereto, gardens incidental thereto on land not owned by the *named insured,* and individual or family cemetery plots or burial vaults."[3] (Emphasis in original.)

---

[3] Endorsement L-3038-2 provides in part:

"This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

OWNERS', LANDLORDS' AND TENANTS' LIABILITY INSURANCE

It is agreed that the insurance applies to the *insured premises,* subject to the following additional provisions:

1. The definition of '*insured premises*' is amended to read as follows: '*insured premises*' means the premises described below or designated in

The plaintiff contends that the trial court erred in applying the definition of insured premises in the endorsement rather than the definition in the insurance policy as originally issued. The plaintiff argues that the trial court either overlooked or ignored the policy provision requiring that the "Additional Definition" provision defining insured premises still be given effect even when there were endorsements forming a part of the policy. The introductory clause to the "Additional Definition" provision, the plaintiff maintains, makes it clear that endorsements forming a part of the policy could never alter or delete from coverage those prem-

---

the policy as subject to this endorsement, including the ways immediately adjoining and including garages and stables incidental thereto, gardens incidental thereto on land not owned by the *named insured,* and individual or family cemetery plots or burial vaults.

2. With respect to operations at such premises,

(a) the insurance applies to *bodily injury* or *property damage* arising out of the structural alterations which involve changing the size of or moving buildings or other structures, new construction or demolition operations performed by or on behalf of the *named insured,* unless such alterations, construction or demolition operations are for the purpose of changing the use of the *insured premises* to other than exclusive use as a one or two family dwelling;

(b) Exclusion (p) is deleted.

3. If the *named insured* is an individual, the 'Persons Insured' provision includes, if residents of the *named insured's* household, the *named insured's* spouse and the relatives of either the *named insured* or such spouse under the age of twenty-one.

4. The insurance does not apply to *bodily injury* or *property damage:*

(a) arising out of the ownership, maintenance or use, or any operations necessary or incidental thereto, of any portion of the *insured premises* on which a trade, profession or business is conducted or which is designed or held for such purposes, provided incidental office, professional, private school or studio occupancy of the premises, the renting of accommodations at the premises to not more than two roomers or boarders and the renting or holding for rental at the premises of not more than three car spaces or stalls shall not be considered a business;

(b) due to the rendering of or failure to render any professional service;

(c) caused by any dog owned by the *insured* while such dog is away from the insured *premises*;

(d) arising out of the use of bicycles by or on behalf of the *insured* for trade, professional or business purpose." (Emphasis in original.)

ises included within the "Additional Definition" provision. The introductory language, to which the plaintiff refers in this context, provides: "When used in reference to this insurance (including endorsements forming a part of the policy): '*insured premises*' means . . . . " Had the defendant company desired to reserve the right to alter coverage, the plaintiff contends, it would have used the words "excluding endorsements" rather than "including endorsements" in this introductory language.

An insurance policy is to be interpreted by the same general rules that govern the construction of any written contract and enforced in accordance with the real intent of the parties as expressed in the language employed in the policy. *Izzo* v. *Colonial Penn Ins. Co.*, 203 Conn. 305, 309, 524 A.2d 641 (1987); *Griswold* v. *Union Labor Life Ins. Co.*, 186 Conn. 507, 512–13, 442 A.2d 920 (1982); *Gottesman* v. *Aetna Ins. Co.*, 177 Conn. 631, 634, 418 A.2d 944 (1979). If the "insurance coverage is defined in terms that are ambiguous, such ambiguity is, in accordance with standard rules of construction, resolved against the insurance company. 'Where the terms of the policy are of doubtful meaning, the construction most favorable to the insured will be adopted.' *LaBonte* v. *Federal Mutual Ins. Co.*, 159 Conn. 252, 256, 268 A.2d 663 (1970); see also *Griswold* v. *Union Labor Life Ins. Co.*, [supra]; *Simses* v. *North America Co. for Life & Health Ins.*, 175 Conn. 77, 84–85, 394 A.2d 710 (1978)." *Beach* v. *Middlesex Mutual Assurance Co.*, 205 Conn. 246, 250, 532 A.2d 1297 (1987). If, however, the words in the policy "are plain and unambiguous the established rules for the construction of contracts apply, the language, from which the intention of the parties is to be deduced, must be accorded its natural and ordinary meaning, and courts cannot indulge in a forced construction ignoring provisions or so distorting them as to accord a meaning

other than that evidently intended by the parties."
*Plainville* v. *Travelers Indemnity Co.,* 178 Conn. 664,
675, 425 A.2d 131 (1979). "A court will not torture
words to import ambiguity where the ordinary mean-
ing leaves no room for ambiguity, and words do not
become ambiguous simply because lawyers or laymen
contend for different meanings." *Downs* v. *National
Casualty Co.,* 146 Conn. 490, 494–95, 152 A.2d 316
(1959). We find the language in the introductory clause
to the "Additional Definition" provision unambiguous.

We construe the introductory clause of the "Addi-
tional Definition" provision to be clear evidence of the
parties' intent to include within the definition of insured
premises any endorsement forming a part of the policy.
The word "endorsement" has been defined as mean-
ing "a provision added to an insurance contract alter-
ing its scope or application that takes precedence over
printed portions in conflict therewith." Webster's Third
New International Dictionary; see *Commercial Stan-
dard Ins.* v. *General Trucking,* 423 So. 2d 168, 170 (Ala.
1982). "Endorsement" has also been defined generally
to mean "[a] written or printed form attached to the
policy which alters provisions of the contract." T.
Green, Glossary of Insurance Terms (1980). "Alter"
has been defined to mean "to cause to become differ-
ent in some particular characteristic [by adding, delet-
ing or amending] without changing into something
else." Webster's Third New International Dictionary.
The word "alter" is synonymous with "change." Id.
Therefore, any endorsement that may add, delete or
amend the definition of insured premises is to be con-
sidered in determining whether the Stamford property
is covered within the policy as an "insured premises."
Thus, contrary to the plaintiff's contentions, we find
the introductory language to be evidence of the par-
ties' intent to reserve the right to add, delete or amend
coverage under the insurance policy.

If we construe the introductory language as urged by the plaintiff, we would need to disregard the express terms of the endorsement. The endorsement specifically states: "This endorsement forms a part of Policy No. 31 OLT 195229." In construing an insurance policy, the court must not ignore or disregard any provision that can be reconciled with other parts of the policy nor should a court interpret a single provision or sentence in a policy and attach to it a greater significance than is intended by the whole terms of a policy. See *Downs* v. *National Casualty Co.*, supra, 494–95; *Commercial Standard Ins.* v. *General Trucking,* supra. It is clear that the parties intended to include any endorsement as part of the policy, specifically the endorsement that is the subject of this appeal, when referring to the definition of "insured premises." Therefore, we conclude that the trial court did not err in its consideration of the endorsement notwithstanding the language of the introductory clause of the "Additional Definition" provision.

In the alternative, the plaintiff argues that if the endorsement is to be included as forming a part of the policy, then it should be interpreted as relating back and including the "Additional Definition" provision defining insured premises. The plaintiff argues that the trial court misinterpreted the definition of "insured premises" in the endorsement as covering only the Fairfield beach property. The endorsement defines insured premises to include "the premises described below or designated in the policy as subject to this endorsement . . . ." The plaintiff argues that this definition refers to two distinct types of premises. The first type is "the premises described below" which refers to the Fairfield beach property. The second type of premises, she claims, are those premises "designated in the policy as subject to this endorsement." The plaintiff asserts that the only premises subject to an endorse-

ment are those premises described in the "Additional Definition" provision of the policy which appears on an earlier page entitled, in part, "Coverage for Designated Premises." The plaintiff also argues that the use, in the endorsement, of the words "additional provisions" preceding the definition of "insured premises" suggests an intent on the part of the defendant company to *add* to the definition of "insured premises" as already defined in the policy. The defendant, on the other hand, argues that the endorsement deletes any reference to an alienated premises clause and limits the designation of insured premises to the Fairfield beach property.

The court must interpret the insurance contract as a whole with all relevant provisions considered together. *Downs* v. *National Casualty Co.*, supra, 495; see also *Beckenstein* v. *Potter & Carrier, Inc.*, 191 Conn. 120, 134, 464 A.2d 6 (1983). "The insurance contract includes the printed form policy, declarations therein, and any endorsements thereto. . . . In construing an endorsement to an insurance policy, the endorsement and policy must be read together, and the policy remains in full force and effect except as altered by the words of the endorsement; conversely the endorsement modifies, to [the] extent of the endorsement, the terms and conditions of the original insurance contract. . . . If any irreconcilable conflict exists between provisions of the policy and provisions of an endorsement, then the latter must control." 13A J. Appleman, Insurance Law and Practice § 7537; see *St. Paul Fire & Marine Ins.* v. *United States Fire Ins. Co.*, 655 F.2d 521, 524 (3d Cir. 1981); *Horace Mann Ins. Co.* v. *Independent School District*, 355 N.W.2d 413, 418 (Minn. 1984); *Ins. Co.* v. *West Plains Air*, 637 S.W.2d 444, 447 (Mo. App. 1982); *Mutual Life Ins. Co.* v. *Daddy$ Money, Inc.*, 646 S.W.2d 255, 259 (Tex. App. 1982); 1 G. Couch, Insurance (2d Ed.) § 436. The pro-

vision in the endorsement defining insured premises states: "The definition of *'insured premises'* is *amended* to read as follows: *'insured premises'* means the premises described below or designated in the policy as subject to this endorsement . . . ." (Emphasis added.) The plaintiff, in making her claim, does not refer to the clause preceding the definition of "insured premises" in the endorsement which purports to amend the "Additional Definition" provision defining "insured premises" in the policy, nor does the plaintiff offer any reasonable rationale why we should disregard that particular language. To accept the plaintiff's interpretation of the endorsement as relating back and including the "Additional Definition" provision of the policy it would be necessary to disregard completely the clause preceding the definition of "insured premises," specifically the natural and ordinary meaning of the word "amended." "Every provision is to be given effect, if possible, and no word or clause eliminated as meaningless, or disregarded as inoperative, if any reasonable meaning consistent with the other parts of the policy can be given to it." *Downs* v. *National Casualty Co.,* supra, 495. We have interpreted the word "amendment" in reference to a statutory amendment as "effect[ing] a change in the existing law." *Waterbury Petroleum Products, Inc.* v. *Canaan Oil & Fuel Co.,* 193 Conn. 208, 232, 477 A.2d 988 (1984); *State* v. *Kozlowski,* 199 Conn. 667, 676, 509 A.2d 20 (1986). The ordinary definition of the word "amend" is "to change or alter in any way, especially in phraseology." Webster's Third New International Dictionary. We find the clause preceding the definition of "insured premises" in the endorsement as evidence of the parties' intent to have the definition of "insured premises" in the endorsement supersede the definition in the "Additional Definition" portion of the policy.

The plaintiff, however, contends that the phrase immediately preceding the amendment clause should control our interpretation of the endorsement. That phrase states: "It is agreed that the insurance applies to the *insured premises,* subject to the following *additional* provisions." (Emphasis added.) The "additional provisions" language in that phrase, the plaintiff maintains, suggests that the definition of "insured premises" includes the "Additional Definition" provision in the policy.

The words "additional provisions" in the phrase immediately preceding the amendment clause in the endorsement is general introductory language that applies to all four provisions appearing in the endorsement. There are two provisions within the endorsement that use language that indicates an express intent not to add to the provisions in the policy. The first provision is the subject of this appeal; the second provision specifically states with respect to operations at the insured premises: "Exclusion (p) is deleted."[4] If we were to interpret this introductory language of the endorsement, i.e., "additional provisions," to mean that each provision is to be added to the policy provision, then a question arises as to how we interpret the provision stating "Exclusion (p) is deleted" and "[t]he definition of *'insured premises'* is amended." The plaintiff does not offer a reasonable legal basis for disregard-

---

[4] One court was faced with the problem of construing a contract where the issue was whether one paragraph had the effect of simply changing the similar wording of another paragraph or, rather, whether it deleted the second paragraph entirely by substituting the first paragraph in its place. *Missouri Research Laboratories, Inc.* v. *Bell Aircraft Corporation,* 161 F. Sup. 871, 874 (W.D.N.Y. 1957). In that case, the court defined the word "amended" as meaning "[t]o change or alter in any way, especially in phraseology" and "delete" as meaning "[t]o erase." In the case before us, "[i]t is presumed [as did the *Missouri Research Laboratories, Inc.* court] that the contracting parties used words of definite meaning." Id.

ing the specific language we refer to in either of these provisions and for relying solely on the general introductory language of the endorsement. Therefore, we conclude that the trial court did not err in its application of the definition of "insured premises" in the endorsement, thereby denying the plaintiff relief.[5]

There is no error.

In this opinion the other justices concurred.

[5] The plaintiff also argues that other provisions within the policy refer to and incorporate the alienated premise clause in the definition of insured premises in the policy. In particular, the plaintiff points to the policy territory provision, the provision appearing at the bottom of the declarations page and an exclusion provision referring to alienated premises. We are unpersuaded, however, by the plaintiff's argument particularly because the provisions the plaintiff points to relate to the definition of "insured premises" as it was before the endorsement became effective, which, as stated above, amended that definition.