**Katherine MAZZAFERRO, Joanne Malec, and Ruth Glahn, Plaintiffs–Appellees,**

v.

**RLI INSURANCE CO., Defendant–Appellant.**

**No. 601, Docket 93–9103.**

United States Court of Appeals, Second Circuit.

Argued Dec. 1, 1994.

Decided March 13, 1995.

Richard H. Alden, Bristol, CT (Anderson, Alden, Hayes & Ziogas, Bristol, CT, of counsel), for plaintiff-appellee Glahn.

J. Brian Gaffney, Eileen M. Meskill, Gaffney Law Associates, New Britain, CT, for plaintiffs-appellees Mazzaferro and Malec.

Martin P. Gold, Butler, Morris & Gold, Hartford, CT, for plaintiff-appellee Malec.

Edward F. Hennessey, Hartford, CT (Raymond T. DeMeo, Robinson & Cole, Hartford, CT, of counsel), for defendant-appellant.

Before: VAN GRAAFEILAND, FEINBERG and MINER, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

RLI Insurance Company appeals pursuant to 28 U.S.C. § 1292(b) from orders of the United States District Court for the District of Connecticut (Dorsey, J.) granting partial summary judgment in favor of Katherine Mazzaferro and the Estates of Joanne Malec and Ruth Glahn and denying RLI's cross-motion for summary judgment in its favor. For the reasons that follow, we reverse.

On February 7, 1985, Katherine Mazzaferro, Joanne Malec and Ruth Glahn, who were employed as nurses by American Red Cross ("Red Cross"), were involved in a two-car collision while traveling on duty in a motor vehicle owned by Red Cross. Malec and Glahn were killed and Mazzaferro sustained serious injuries. At the time of the accident, Red Cross had an automobile insurance policy with The Travelers Indemnity Company which provided uninsured/underinsured motorist ("UUM") coverage as required by Connecticut law.

Red Cross had executed a document rejecting UUM coverage in all states where such rejection was permitted by law and electing the minimum required UUM insurance limits where rejection was not permitted. The Travelers policy issued to Red Cross that was applicable in Connecticut provided $1,000,000 of liability coverage and $40,000 of UUM coverage. However, the Connecticut Supreme Court held that the Red Cross election was ineffective because a revision of Conn.Gen.Stat.Ann. § 38–175c(a)(2), now § 38a–336(a)(2), made after the election, required UUM coverage to be equal to liability coverage unless the insured specifically requested a lower amount, and Red Cross had not re-elected lower UUM

limits after the effective date of the revision. *See Travelers Indemnity Co. v. Malec,* 215 Conn. 399, 576 A.2d 485 (1990). Plaintiffs recovered a total of $1,000,000 in UUM benefits under the Travelers policy, thereby exhausting UUM coverage.

At the time of the accident, Red Cross also had an "Umbrella Liability Policy" with RLI. After exhausting coverage under the Travelers policy, plaintiffs sought additional UUM benefits under the RLI policy. When RLI denied their claims, plaintiffs brought this action, and the parties filed cross-motions for summary judgment contesting the availability of UUM coverage under the RLI policy. On April 3, 1992, the district court granted plaintiffs' motion and denied RLI's. The court found that the RLI policy was ambiguous as to whether it provided UUM coverage and, relying on the doctrine that ambiguities in insurance contracts are resolved in favor of the insured, granted partial summary judgment to the plaintiffs.

On October 19, 1992, RLI moved that the district court reconsider and amend its summary judgment ruling. The motion was based in part on two Connecticut Supreme Court cases that were decided after the district court's summary judgment order, *Mass v. United States Fidelity & Guar. Co.,* 222 Conn. 631, 610 A.2d 1185 (1992), and *Curran v. Aetna Casualty & Sur. Co.,* 222 Conn. 657, 610 A.2d 1198 (1992). Thereafter, on January 21, 1993, RLI moved to amend its answer to add an affirmative defense that the three nurses, who were on duty and were traveling in a Red Cross vehicle at the time of the accident, were barred from recovering UUM benefits by § 31–284(a), the exclusive remedy provision of Connecticut's Worker Compensation Act. This proposed additional defense also cited new case law, *CNA Ins. Co. v. Colman,* 222 Conn. 769, 610 A.2d 1257 (1992), and *Bouley v. Norwich,* 222 Conn. 744, 610 A.2d 1245 (1992). Finally, on February 23, 1993, RLI made a second motion for summary judgment based on the proposed new defense. The district court denied the motions on September 15, 1993. The court reviewed the *Mass* and *Curran* cases, but did not consider them dispositive and so refused to alter its judgment. The court also rejected the proposed new defense as untimely.

■ Because we are concerned here with a claim for uninsured/underinsured motorist coverage, the proper starting point in our search for the parties' intent is a clear understanding of what UUM coverage is. Briefly stated, it is a form of insurance that compensates an insured motorist for injuries caused by the negligence of another motorist who is either uninsured or underinsured. It does not provide additional liability coverage for the negligence of the insured himself. *See* 12A *Couch on Insurance 2d* § 45:620, at 17 (rev. ed. 1981). "[UUM] coverage fills that void where the insured and his family are not at fault, but are injured, and where the one inflicting the injury either is uninsured, underinsured or a hit and run driver where the identity and fact of insurance or non-insurance cannot be ascertained." *Id.* at 18.

The nature of liability insurance coverage is too well settled to permit quibbling. *Black's Law Dictionary* 824 (5th ed. 1979), quoted with approval in *McNeilab, Inc. v. North River Ins. Co.,* 645 F.Supp. 525, 537 (D.N.J.1986), *aff'd without opinion,* 831 F.2d 287 (3d Cir.1987), defines "liability insurance" as "[t]hat type of insurance protection which indemnifies one from liability to third persons as contrasted with insurance coverage from losses sustained by the insured." *See also* 44 C.J.S. *Insurance* § 9 (1993). "Liability insurance is designed to protect an insured from claims for damages owed to a third person, and not from losses that the insured suffers directly." *Norwich v. Silverberg,* 200 Conn. 367, 372, 511 A.2d 336 (1986) (citing *Cain v. American Policyholders' Ins. Co.,* 120 Conn. 645, 653, 183 A. 403 (1936)).

■ The distinction between liability insurance and UUM coverage is clear and well recognized. The latter is based on a public policy that " 'every insured is entitled to recover for the damages he or she would have been able to recover if the uninsured motorist [with whom the insured collided] had maintained a policy of liability insurance.' " *Streitweiser v. Middlesex Mut. Assurance Co.,* 219 Conn. 371, 377, 593 A.2d 498 (1991) (quoting *Harvey v. Travelers Indem. Co.,* 188 Conn. 245, 249, 449 A.2d 157 (1982)). To the

extent that liability plays any role in a case where the plaintiff is seeking UUM recovery, it is the liability of the wrongdoing tortfeaser, not that of the innocent insured. *See Covenant Ins. Co. v. Coon,* 220 Conn. 30, 34, 594 A.2d 977 (1991); *American Motorists Ins. Co. v. Gould,* 213 Conn. 625, 630, 569 A.2d 1105 (1990).

In the instant case, RLI agreed "to pay on behalf of [Red Cross] all sums which [Red Cross] shall be obligated to pay by reason of the liability imposed upon [Red Cross] by law or liability assumed by [Red Cross] under contract or agreement for damages and expenses, because of ... PERSONAL INJURY ... to which this policy applies." Despite the clear and explicit language of this coverage provision, which deals with liability imposed upon or assumed by Red Cross, the district court held RLI responsible for UUM payments which were not a Red Cross liability at all. The district court reached this result by referring to an Endorsement of RLI's policy which, under the caption "AUTOMOBILE LIABILITY", provided:

This policy does not apply to Personal Injury or Property Damage arising out of the ownership, maintenance, operation, use, loading or unloading of any automobile unless insurance therefor is provided by a policy listed in the Underlying Insurance Schedule and then only for such coverage as is afforded by such policy.

The district court said that the Endorsement was "not cast in terms of the insured's liability for personal injury, but simply to personal injury," and thus transformed RLI's policy from one of excess personal liability coverage for Red Cross into a quasi-UUM policy, subjecting RLI to unexpected exposure to its own insureds which is required neither by statute nor by contract.

▮▮▮ "A contract of insurance must be read as a whole, including any introductory clause or heading, to determine the intent of the parties." *Save Mart Supermarkets v. Underwriters at Lloyd's London,* 843 F.Supp. 597, 607 (N.D.Cal.1994) (quoting *Ogburn v. Travelers Ins. Co.,* 207 Cal. 50, 52–53, 276 P. 1004 (1929)). "Every provision is to be given effect, if possible, and no word or clause eliminated as meaningless, or disre-

garded as inoperative, if any reasonable meaning consistent with the other parts of the policy can be given to it." *Downs v. National Casualty Co.,* 146 Conn. 490, 495, 152 A.2d 316 (1959). "In construing an insurance policy, the court must not ignore or disregard any provision that can be reconciled with other parts of the policy nor should a court interpret a single provision or sentence in a policy and attach to it a greater significance than is intended by the whole terms of a policy." *Schultz v. Hartford Fire Ins. Co.,* 213 Conn. 696, 704, 569 A.2d 1131 (1990). Every clause or word is deemed to have some meaning. *Theatre Guild Prods., Inc. v. Insurance Corp. of Ireland,* 25 A.D.2d 109, 111, 267 N.Y.S.2d 297 (1966), *aff'd,* 19 N.Y.2d 656, 278 N.Y.S.2d 625, 225 N.E.2d 216 (1967). Like any other contract, "effect must be given to all its provisions." *Finery Silk Stocking Co. v. Aetna Ins. Co.,* 227 A.D. 39, 42, 237 N.Y.S. 36 (1929). RLI's policy bears the caption title "Umbrella Liability Policy." A reasonable person construing this caption would expect the policy to provide coverage for excess liability, not uninsured motorist protection. He would be reenforced in this belief by the caption over the questioned Endorsement which reads: "AUTOMOBILE LIABILITY". If the Endorsement is read as the district court would have it, it squarely contradicts the policy's terms of coverage, which cover liability to third parties only. "Injury" and "liability" are not synonymous, and the district court's attempt to make them so must be rejected.

In *Mass, supra,* 222 Conn. at 644–47, 610 A.2d 1185, the court discussed the fundamental difference between liability insurance and UUM coverage. Although the Connecticut court was not presented with the exact issue before this Court, it cited with favor the New York case of *Matarasso v. Continental Casualty Co.,* 82 A.D.2d 861, 862, 440 N.Y.S.2d 40 (1981), *aff'd,* 56 N.Y.2d 264, 451 N.Y.S.2d 703, 436 N.E.2d 1305 (1982). In *Matarasso,* the issue before this Court was decided in favor of the insurance company under New York law. The Connecticut Supreme Court quoted the following excerpt from that decision:

"The umbrella policy clearly provides *excess protection* for [the insured] and his

business *against liability from third party claims.* It incorporates the underlying policies insofar as they provide for protection against liability for damages to third parties. *The uninsured motorist coverage provided by the underlying automobile liability policy does not involve claims of liability against the insured from third parties and is not incorporated by the umbrella policy. Any other interpretation would distort the actual purpose of the umbrella policy.*" (Emphasis added.) [*Matarasso,* 82 A.D.2d at] 862 [440 N.Y.S.2d 40].

*Mass,* 222 Conn. at 644, 610 A.2d 1185 (emphasis in original). The *Mass* court also quoted from *Hartbarger v. Country Mut. Ins. Co.,* 107 Ill.App.3d 391, 63 Ill.Dec. 42, 437 N.E.2d 691 (1982), a case in which the issue was resolved similarly under Illinois law:

"It is obvious that the present [excess] policy was intended by both parties to protect the insured against excess judgments, and the risks and premiums were calculated accordingly. To require that policy to furnish uninsured motorist coverage would work a substantial revision of that policy." *Hartbarger* [63 Ill.Dec. at 45, 437 N.E.2d at 694].

*Mass,* 222 Conn. at 642, 610 A.2d 1185.

The district court recognized that the RLI policy was intended as liability insurance and it understood the difference between liability insurance and UUM coverage. Nevertheless, the court relied on a warped interpretation of the Endorsement to require UUM coverage. In doing so, the court was "indulg[ing] in a forced construction," and "tortur[ing] words to import ambiguity where the ordinary meaning leaves no room for ambiguity." *Schultz, supra,* 213 Conn. at 702–03, 569 A.2d 1131 (internal quotations omitted). Reading the RLI policy and the Endorsement together, as we must, *id.* at 705, 569 A.2d 1131, it is clear that no coverage for first party "injury" unassociated with liability was intended.

Because we reach this conclusion, we need not address the issues presented by RLI's proposed Worker's Compensation defense, which the district court rejected as untimely.

The judgment of the district court is reversed with instructions to dismiss the complaint.