[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (#111)
V. Factual and Procedural Background
On April 8, 1998, the plaintiff, Blue Ridge Insurance Company, filed a declaratory judgment complaint against the defendants, Albert Honegan and David A. Malcolm, claiming that it has no duty to defend and/or indemnify Malcolm in the underlying action Albert Honegan v. David A. Malcolm, Superior Court, judicial district of Middlesex at Middletown, Docket No. CV-97-0084159S ("the underlying action").
The following counts of the underlying complaint dated March 2, 1998 are at issue here: The first count alleging assault; the second count alleging intentional infliction of emotional distress, and the fifth count alleging negligent infliction of emotional distress. The underlying complaint alleges the following: On or about October 23, 1997, Honegan noticed a "Century 21" sign at or near the end of Malcolm's driveway. Honegan drove his car up the driveway and stopped in front of the garage. At this time Honegan observed an adult male exit the garage area and walk in a threatening and hostile and rapid manner towards his car. Honegan became fearful and attempted to back his car out of the driveway. The aforementioned adult male fired gun shots. The firing of the shots was an intentional physical act by Malcolm. As a result, Honegan sustained great physical and mental suffering and anguish requiring treatment, all to his loss, and some or all of his injuries are, or may be, permanent in nature.
On March 2, 2000, Blue Ridge filed a motion for summary judgment and supporting memorandum of law. Blue Ridge argues that it is entitled to summary judgment on the ground that there is no genuine issue of material fact and it is entitled to judgment as a matter of law because it has no duty to defend and/or indemnify Malcolm. On April 20, 2000, Malcolm filed an objection to the motion for summary judgment on the ground that there is a genuine issue of material fact that Blue Ridge has a duty to defend CT Page 10568 and/or indemnify Malcolm. On April 26, 2000, Malcolm filed a memorandum in support of his objection to the motion for summary judgment.
For the reasons stated below, Blue Ridge's motion for summary judgment is denied.
II. Standard of Review
"The judgment sought shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Practice Book § 17-49. Summary judgment "is appropriate only if a fair and reasonable person could conclude only one way." Miller v. United Technologies Corp., 233 Conn. 732, 751,660 A.2d 810 (1995). A material fact is one "which will make a difference in the result of the case." Barrett v. Southern Connecticut Gas Co.,172 Conn. 362, 378, 374 A.2d 1051 (1977). "In deciding on a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . ." (Internal quotation marks omitted.) Hertz Corp. v. Federal Ins. Co., 245 Conn. 374, 381, 713 A.2d 820
(1998). "The movant must show that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact. . . ." (Internal quotation marks omitted.) Miller v.United Technologies Corp., supra, 233 Conn. 751-52. "[A] party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue." Maffucci v. Royal ParkLimited Partnership, 243 Conn. 552, 554-55, 707 A.2d 15 (1998).
III. Discussion
Blue Ridge argues that it is entitled to summary judgment on the ground that there is no genuine issue of material fact and it is entitled to judgment as a matter of law because it has no duty to defend and/or indemnify Malcolm. Specifically, Blue Ridge argues that Honegan has not alleged facts in the underlying action that he sustained damages that arose out of an "occurrence" as defined by Malcolm's homeowner's policy and umbrella policy.
In response, Malcolm argues that there is a genuine issue of material fact that Blue Ridge has a duty to defend and/or indemnify him. He argues that Honegan has alleged facts in the underlying action that he sustained damages that arose out of an "occurrence" as defined by Malcolm's homeowner's policy and umbrella policy.
"The obligation of the insurer to defend does not depend on whether the CT Page 10569 injured party will successfully maintain a cause of action against the insured but on whether he has, in his complaint, stated facts which bring the injury within the coverage. If an allegation of the complaint falls even possibly within the coverage, then the insurance company must defend the insured." Moore v. Continental Casualty Co., 252 Conn. 405, 409,746 A.2d 1252 (2000).
The relevant sections of Malcolm's homeowner's liability insurance policy at issue here, No. 052-92-75, are as follows:
Section II — Liability Coverages, Coverage E — Personal Liability —
"If a claim is made or a suit is brought against an `insured' for damages because of `bodily injury' or `property damage' caused by an `occurrence,' or because of `personal injury' caused by an offense, to which this coverage applies, we will:
1. pay up to our limit of liability for the damages for which the `insured' is legally liable. Damages include prejudgment interest awarded against the `insured.'
2. provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from the `occurrence' or offense equals our limit of liability."
Definitions —
"8. `occurrence' means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period. . . ."
"Accident" is not defined in the policy.
"9. `personal injury' means injury arising out of one or more of the following offenses which occur during the policy period:
a. false arrest, detention or imprisonment, or malicious prosecution;
b. libel, slander or defamation of character; or
c. invasion of privacy, wrongful eviction or wrongful entry."
The relevant sections of Malcolm's umbrella policy at issue here, No. CT Page 10570 U0025109, are as follows:
Conditions —
"1. Limits of Liability.
We are liable only for your `ultimate net loss' in excess of your `retained limit.' Our liability for any one `occurrence' will not exceed the amount of liability shown in the
Declarations regardless of the number of: a. `Insureds' under this policy;
b. Persons or organizations who sustain `personal injury' or `property damage'; or
c. Claims made or suits brought because of `personal injury' or `property damage.'"
Additional Coverages —
"In addition to our limit of liability, we shall provide the following coverage for an `occurrence' which is covered by this insurance. . . ."
Definitions —
"5. `Occurrence' means an accident, including exposure to conditions, which results, during the policy period. . . ."
"Accident" is not defined in the policy.
"It is the function of the court to construe the provisions of the contract of insurance." Flint v. Universal Machine Co., 238 Conn. 637,642, 679 A.2d 929 (1996). "An insurance policy is to be interpreted by the same general rules that govern the construction of any written contract and enforced in accordance with the real intent of the parties as expressed in the language employed in the policy." Schultz v. HartfordFire Ins. Co., 213 Conn. 696, 702, 569 A.2d 1131 (1990). "If . . . the words in the policy are plain and unambiguous the established rules for the construction of contracts apply, the language, from which the intention of the parties is to be deduced, must be accorded its natural and ordinary meaning, and courts cannot indulge in a forced construction ignoring provisions or so distorting them as to accord a meaning other than that evidently intended by the parties." (Internal quotation marks omitted.) Id., 702-703. "If the insurance coverage is defined in terms that are ambiguous, such ambiguity is, in accordance with standard rules CT Page 10571 of construction, resolved against the insurance company." (Internal quotation marks omitted.) Id., 702. "Where the terms of the policy are of doubtful meaning, the construction most favorable to the insured will be adopted." (Internal quotation marks omitted.) Id.
The threshold issue here is whether Honegan has alleged facts in the underlying action that he sustained damages that arose out of an "occurrence" as defined by Malcolm's homeowner's policy and umbrella policy.
In Malcolm's homeowner's policy and umbrella policy "occurrence" is defined as an "accident." "Accident" is not defined in either of the policies. However, Connecticut courts have discussed the definition of "accident." "Accident" has been defined as "a sudden event or change occurring without intent or volition through carelessness, unawareness, ignorance or a combination of causes and producing an unfortunate result. Webster's Third New International Dictionary of the English Language." Providence Washington Ins. Group v. Albarello, 784 F. Sup. 950,953 (D. Conn. 1992). "An accident is an unintended occurrence." Hammerv. Lumberman's Mutual Casualty Co., 214 Conn. 573, 590, 573 A.2d 699
(1990). "The term `accident' is to be, construed in its ordinary meaning of an `unexpected happening'. The `accident' was the event causing injury, not the cause of that event." (Citations omitted.) CommercialContractors Corp. v. American Ins. Co., 152 Conn. 31, 42, 202 A.2d 498
(1964). The focus is on whether the event causing the injury was accidental, not on whether the injury was accidental because the damages were unintended. Providence Washington Ins. Group v. Albarello,784 F. Sup. 950, 953 (D. Conn. 1992).
In the underlying complaint, Honegan alleges that Malcolm's acts were intentional. He alleges that the "event causing the injury" was the firing of the gun which was an intentional act. In his Memorandum in Support of Plaintiff's Motion for Summary Judgment, dated February 29, 2000, Blue Ridge references deposition testimony by Malcolm dated January 10, 2000, claiming that the facts demonstrate that the act of firing the gun was an intentional/non-accidental act by Malcolm. Blue Ridge argues that: "He stated that pulling the gun and discharging it was an `act of protection' (T.19). He fired the gun three or four times in order `to get the person off my property.' (T.21). In order to fire the gun he had to go through separate intentional actions of 1) removing the gun from the holster, 2) releasing the safety (as he stated the reason one releases the safety is in order to discharge a bullet. T.24), and 3) firing the gun three or four time[s]. (T.23)[.] The trigger must be pulled for each shot since the gun is not an automatic weapon[.] (T.26). He considered the individual on his property an `intruder'; [(T.28)]; and used the gun to get him to leave the property. He had no `other purpose in discharging CT Page 10572 [his] weapon three or four times [other than] to have the intruder leave [his] property.' [(T.32-33, 35)]. Firing the gun had the desired result of forcing Honegan to leave the property. [(T.33)]."
On the other hand, Malcolm claims that his act of firing the gun was an unintentional act, a reaction, an "accident." Therefore, he argues that there is a dispute as to whether the firing of the gun constitutes an "occurrence" as defined by his insurance policies. He argues that this issue raises questions of fact for the jury to decide. In his Memorandum of Law in Support of Objection to Motion for Summary Judgment, dated April 26, 2000, Malcolm references and attaches deposition testimony dated January 10, 2000, provided by himself, in which he denies intentionally firing the weapon. Malcolm argues that his deposition states that: "He admits to firing the handgun. However, `. . . it happened very quickly, I wasn't thinking about what I was doing . . .' (Deposition of David Malcolm, p. 19, 11.10-11, attached hereto as Exhibit C.) `[He] never did anything intentionally.' [Pulling the trigger] `was a reaction.' (Deposition of David Malcolm, p. 21, attached hereto as Exhibit C.) `[He] never intended to do anything it was a reaction to fear.' (Deposition of David Malcolm, pp. 21-22, attached hereto as Exhibit C.) `. . . [He] discharged the gun because [he] was scared for the safety of [his] family.' (Deposition of David Malcolm, p. 34, attached hereto as Exhibit C.) He said it happened so fast and that he was `reacting.' (Deposition of David Malcolm, p. 21 and 38, attached hereto as Exhibit C.)."
"In interpreting our decision in Esposito v. Wethered, 4 Conn. App. 641,496 A.2d 222 (1985), the Superior Court has been split as to whether deposition testimony, either uncertified or certified, may be considered for the purposes of a motion for summary judgment pursuant to Practice Book § 384. Since our decision in Esposito, we have not determined it to be improper for a trial court to consider deposition testimony in ruling on a motion for summary judgment. See Maffucci v. Royal Park Ltd.Partnership, 42 Conn. App. 563, 568, 680 A.2d 333, cert. denied,239 Conn. 948, 686 A.2d 125 (1996); Union Trust Co. v. Jackson,42 Conn. App. 413, 420, 679 A.2d 421 (1996); Battistoni v. WeatherkingProducts, Inc., 41 Conn. App. 555, 560-61, 676 A.2d 890 (1996)."Schratwieser v. Hartford Casualty Ins. Co., 44 Conn. App. 754, 765 n. 1,692 A.2d 1283, cert. denied, 241 Conn. 915, 696 A.2d 340 (1997). The court here will consider the deposition testimony in ruling on this motion for summary judgment.
The issue of whether conduct which was alleged would constitute an "occurrence" within the meaning of a specified insurance policy was addressed in both Assurance Co. of America v. Cabeleiro, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 355615 (June 16, 1999, Skolnick, J.) and Aetna Casualty Surety v. Gentile, Superior CT Page 10573 Court, judicial district of New Haven at New Haven, Docket No. 353207 (June 24, 1997, Silbert, J.). In both Assurance Co. of America v.Cabeleiro, supra, Superior Court, Docket No. 355615 and Aetna Casualty Surety v. Gentile, supra. Superior Court, Docket No. 353207, the courts denied motions for summary on the ground that there is a genuine issue of material fact as to whether the conduct alleged in the underlying complaints constitute an "occurrence" as defined in the policies.
In Assurance Co. of America v. Cabeleiro, supra, Superior Court, Docket No. 355615, Assurance Co. of America filed a motion for summary judgment arguing that the acts alleged by the plaintiffs in the underlying action do not constitute an "occurrence" under Cabeleiro's insurance policy because "occurrence" is defined under the policy as an "accident," and the acts alleged are intentional. In response, Cabeleiro argued that their affidavits raise genuine issues of material fact that they did not act intentionally. Id. The court reasoned that, "`[i]ntent is clearly a question of fact that is ordinarily inferred from one s conduct or acts under the circumstances of the particular case. . . . Thus, whether the actor knows the consequences of his or her conduct are certain or substantially certain to result from his or her act and still proceeds with the conduct, so that he or she should be treated by the law as though he or she in fact desired to produce the result, is a question of fact for the jury.' Morascini v. Commissioner of Public Safety,236 Conn. 781, 809, 675 A.2d 1340 (1996)." Id. "`A question of intent raises an issue of material fact, which cannot be decided on a motion for summary judgment.' Suarez v. Dickmont Plastics Corp., 229 Conn. 99, 111,639 A.2d 507 (1994)." Id.
Similarly, in Aetna Casualty Surety v. Gentile, supra, Superior Court, Docket No. 353207, Aetna Casualty Surety filed a motion for summary judgment arguing that the acts alleged by the plaintiff in the underlying action do not constitute an "occurrence" under Gentile's insurance policy which defines an "occurrence" as an "accident." Id. Aetna argued that the plaintiff in the underlying action sustained injuries as a result of Gentile's affirmative acts, and not as the result of an accident. Id. In support of this proposition, Aetna referenced admissions and a statement to the police by the plaintiff in the underlying action. Id. In opposition, Gentile argued that the injuries were sustained as the result of an accident. Id. The court stated that, "`[s]ummary judgment procedure is particularly inappropriate where the inferences which the parties seek to have drawn deal with questions of motive, intent and subjective feelings and reactions.' Suarez v. DickmontPlastics Corp., 229 Conn. 99, 111, 639 A.2d 507 (1994)." Id. The court reasoned that, "[w]hile the admissions and the statement do establish that [the plaintiff in the underlying action] suffered injuries caused when Gentile stabbed and beat her, this evidence does not conclusively CT Page 10574 establish Gentile's subjective intentions at the time of the incident." Id. "As it is not this court's duty to resolve such factual disputes in connection with a motion for summary judgment, but merely to determine whether they exist, Aetna has failed to sustain its burden of establishing the nonexistence of a material fact concerning the intentions of Gentile at the time when [the plaintiff in the underlying action] suffered her injuries." Id.
Likewise, here, questions of intent have been raised which present a genuine issue of material fact as to whether there is an "occurrence" as defined by Malcolm's policies. Blue Ridge references allegations in the underlying complaint and deposition testimony by Malcolm that Malcolm intentionally fired the gun. On the other hand, Malcolm references his deposition testimony where he states that he did not intentionally fire the gun, that it was a reaction, an "accident." Accordingly, there exists a genuine issue of material fact.
In addition, although under Malcolm's homeowner's policy the policy provides for liability coverage "[i]f a claim is made or a suit is brought against an `insured' for damages because . . . of `personal injury' caused by an offense, to which this coverage applies," Honegan does not allege "an offense, to which this coverage applies," namely "an false arrest, detention or imprisonment, or malicious prosecution; b. libel, slander or defamation of character; or c. invasion of privacy, wrongful eviction or wrongful entry." With respect to Malcolm's umbrella policy, the policy only provides coverage for an "occurrence." Accordingly, whether facts allege that the underlying suit has been brought against Malcolm for damages Honegan sustained which were caused by an "occurrence" remains the dispositive issue here.
Accordingly, Blue Ridge's motion for summary judgment is denied because there exists a genuine issue of material fact as to whether there was an "occurrence," within the meaning of Malcolm's insurance policies.
IV Conclusion
For the reasons stated above, Blue Ridge's motion for summary judgment is denied. It is so ordered.
By the court
Gordon, Judge